*Orig.*

DOCKETED
FEB 0 2 2004

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JUDGE COAR

| | |
|---|---|
| LINA DAQA, | ) |
| A95 925 347, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, and CYNTHIA O'CONNELL, | ) |
| Interim Director of the Bureau of | ) |
| Immigration and Customs Enforcement of | ) |
| the DEPARTMENT OF HOMELAND | ) |
| SECURITY, | ) |
| | ) |
| Respondents. | ) |

**04C 0778**

**MAGISTRATE JUDGE LEVIN**

## PETITION FOR A WRIT OF HABEAS CORPUS

This is an action brought pursuant to 28 USC §1331, 28 USC §2241, 5 USC §551 *et seq.*, 28 USC §§2201 *et seq.*, and All Writs Act, 28 USC §1651 for declaratory and injunctive relief, to protect Petitioner's rights under the Due Process Clause of the Fifth Amendment of the Constitution and applicable federal law, and to issue a writ of habeas corpus, and enjoin Petitioner's detention and removal from the United States. In support of the petition, Petitioner states as follows:

### CUSTODY

1.      Petitioner is in the physical custody of the Interim Director of the Bureau of Immigration and Customs Enforcement in Chicago, Illinois, and is currently detained in Kenosha County Detention Center in Wisconsin.

### JURISDICTION AND VENUE

2.      Jurisdiction is proper in this Court because the Petition clearly alleges widespread constitutional violations against Petitioner which could not have been raised before. Jurisdiction is properly based on 28 U.S.C. § 2241 (Habeas Corpus), 28 U.S.C. §

1

1331 (Federal Question); 42 U.S.C. § 1983 (Civil Rights Statutes), the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq.*, the Mandamus Statute, 28 U.S.C. § 1361 and the Suspension Clause, Art. I, Sec. 9, Clause 2.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Petitioner's claims occurred here. Venue lies in the United States District Court for the District where Petitioner is being detained and from where the Bureau of Immigration and Customs Enforcement (BICE) of the Department of Homeland Security (DHS), has initiated removal proceedings.

## PARTIES

4. Petitioner, Lina Daqa, is a native of Israel from the Occupied Territories and a national of Palestine, born on December 11, 1974, in the West Bank in Nablus, Palestine. (See Exhibit 1).

5. Respondent, Bureau of Immigration and Customs Enforcement, is an agency of the federal government within the Department of Homeland Security and is an agency in charge of enforcing the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et. seq.*

6. Respondent, Cynthia O'Connell, is the Interim District Director of the Chicago District Office of the BICE and is charged with the duty of administration and enforcement of all the functions and powers and duties of the BICE in the greater Chicago area.

## EXHAUSTION OF REMEDIES

7. Petitioner has exhausted her administrative remedies to the extent required by law, and her only remedy is by way of this judicial action. Moreover, where habeas corpus petitioners question the constitutionality of a statute, as in the instant matter, they need not exhaust administrative remedies prior to filing their petition. *Bonsol v. Perryman*, 2003 U.S. Dist. LEXIS 82, (N. D. Ill. 2003).

## STATEMENT OF FACTS

8.      Petitioner, Lina Daqa, is a native of Israel from the Occupied Territories and a national of Palestine.

9.      The Petitioner is married to Abdel Raouf Daqa, A095 925 349, who resides in Palos Hills, Illinois. He registered with the Department of Homeland Security, A#95 295 349, and his next scheduled removal hearing is June 10, 2004, at 55 E. Monroe, Suite 1900, Chicago, Illinois, before Immigration Judge Fujimoto. (See Exhibit 2).

10.     The Petitioner has two young children, one who is a United States citizen. Both are currently living with relatives in Washington D.C. due to the Petitioner's lengthy detention. The Petitioner's children are Jenan Daqa, born on October 15, 1998, and Majd Daqa who was born in the United States on July 24, 2000. (See Exhibit 3,4).

11.     Petitioner, Lina Daqa was detained by the Bureau of Immigration and Customs Enforcement, on May 31, 2003, after attempting to re-enter the United States on a valid B-2 visitor's visa from the Palestinian territory with her two young children, one of who is an American citizen.

12.     Petitioner's unexpired passport did not contain an immigrant visa. The Immigration and Customs Enforcement detained the Petitioner after deciding she was not a bona-fide visitor and had the intention to stay in the United States indefinitely as an immigrant. The Petitioner had twice previously entered the United States as a non-immigrant visitor and subsequently returned to the Occupied Territories. (See Exhibit 5).

13.     On May 31, 2003, the Petitioner was taken into the custody of the BICE. The Petitioner expressed a fear of returning to the Occupied Territories. Rather than return to the Palestinian territory, Mrs. Daqa requested political asylum in the United States. She was subsequently referred to an Asylum Officer who examined her claim and found that she had a credible fear of returning to the Occupied Territories on account of her being Palestinian. She was then scheduled for a political asylum hearing before the Immigration Court. (See Exhibit 6).

3

14.     Petitioner is currently being detained at the Kenosha County Detention Center in Wisconsin. Petitioner is being subjected to detention pursuant to the provisions of 8 U.S.C.S. §1226(a), which provides that the decision to release an alien on bond or parole is discretionary and depends upon such traditional factors as flight risk and danger to the community.

15.     On or about July 14, 2003, the BICE[1] (formerly the Immigration and Naturalization Service) issued Petitioner a Notice to Appear (NTA) charging Petitioner as removable from the United States pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §1182(a)(7)(A)(i)(I)- Immigrant who at time for application for admission was not on possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (See Exhibit 7).

16.     BICE has twice denied her requests for parole (three requests were made by the Petitioner with supporting documents and the third request was not answered by BICE) because BICE concluded that the Petitioner's proposed application for political asylum was "suspect". (See Exhibit 8,9).

17.     Petitioner filed an application for Asylum and Withholding of Removal with the Immigration Court and requested the relief of asylum under INA §208(a), withholding of removal under INA §241(b)(3), and withholding of removal under the Torture Convention 8 C.F.R. §1208.16.

18.     Petitioner's hearing before the Immigration Judge was held and on November 7, 2003, in Chicago, Illinois, and Immigration Judge Brahos, Chicago, Illinois, denied petitioner's application for asylum. (See Exhibit 10).

19.     The Petitioner and her witnesses were all found to be credible and their testimony consistent with each other and with her application.

20.     The attorney for the petitioner then timely filed a Motion to Reconsider and a Motion to Reopen. Both motions were denied on January 7, 2004. (See Exhibit 11).

---

[1] On March 1, 2003, the Immigration and Naturalization Service became a part of the Department of Homeland Security. The Bureau of Immigration and Customs Enforcement, as a part of the Department of Homeland Security, is responsible for enforcement of customs and immigration laws.

4

21.     A Notice of Appeal of the January 07, 2004 and November 7, 2003, decisions of the immigration judge was filed with the Board of Immigration Appeals (BIA) on January 29, 2004, and the appeal is pending. (See Exhibit 12).

22.     The immigration judge held, in part, that although the confiscation of Mrs. Daqa's land by Israel to construct a border fence can rise to the level of persecution, the confiscation of Ms. Daqa's land was not on account of her race, religion, nationality, political opinion or her membership in a particular social group but rather for to provide additional security to Israel.

23.     This tenuous legal point may be overturned on Mrs. Daqa's pending appeal to the Board of Immigration Appeals or failing that, the United States Court of Appeals for the Seventh Circuit, (Chicago, Illinois). Mrs. Daqa believes that decision may be overturned because she did suffer persecution in the form of the Israeli government confiscating her land on account of her nationality, membership in the group of land owners whose land was confiscated and because of an expressed and imputed political opinion.

24.     The Israeli government explained that seizing land owned by Palestinians to build a fence would serve in some way to stem terrorist attacks. However, there has been an outcry from the international community and the United States questioning the legitimacy and the necessity of this uncompensated seizure of land owned by Palestinians to build such a fence. Moreover, Ms. Daqa has been threatened and pressured by the HAMAS to protest the taking of the land. However, the International Court of Justice in the Hague, Netherlands, has scheduled a hearing on the legality of the border project. A U.N. report found that the barrier will cause hardship for hundreds of thousands of Palestinians and tens of thousands would be cut off from their farmlands and vital services as is precisely the situation with the petitioner and her family. (See Exhibit 13).

25.     The finding of the Immigration judge that the petitioner is credible severely undermines any "suspicious nature" to her claim that would in any sense justify the government's refusal to release the Petitioner pending her appeal. Despite the fact that over the last six months, the attorney for the Petitioner has made three Requests for Parole directed to BICE. All have been denied even though the Petitioner has been held by the immigration judge to be credible and the Petitioner has never been found by the BICE to be a flight risk or danger to the community, but only stated that her claim for

5

asylum initially was "suspect". Additionally, there has been significant public support for the Petitioner's release. (See Exhibit 14).

27.     Mrs. Daqa's incarceration has already been quite lengthy and has caused tremendous hardship on her, her young children and her husband.

28.     The Petitioner's indefinite detention and failure to hold a bond hearing on Petitioner's detention are serious constitutional violations. Petitioner submits that these are serious and widespread due process violations. Petitioner remains in the custody of BICE and herein requests that she be released from BICE custody.

29.     Mrs. Daqa faces a 10-year bar to entering the United States as a result of the removal order and a possible 10-year bar from re-entering the United States if the government considers her to have been "unlawfully present." 8 U.S.C. §(a)(9)(B)(i)(II). This bar would only be triggered if Petitioner departs the United States. See INS Memorandum HQIRT 5015.12, 196 Act. 026, Implementation of § 12(9)(6)(A) and 212 (a)(9) grounds of inadmissibility, March 31, 1997, reprinted in 74 Interpreter Releases 562, App. I (April 7, 1997).

## COUNT 1

### (Substantive Due Process Violation)

30.     The allegations set forth in paragraphs 1 through 29 above are repeated and re-alleged as fully set forth herein.

31.     Petitioner's admission to the United States on two occasions prior to the instant refusal to admit Petitioner constitutes a practice that is arbitrary and capricious and a violation of Procedural Due Process under Fifth Amendment of the United States Constitution.

32.     The substantive due process clause prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. The government may not infringe a person's fundamental liberty interests, regardless of the process provided, unless it narrowly tailors the infringement to serve a compelling state interest.

6

## COUNT II

(Violation of Substantive Due Process Protected by the Fifth, Ninth, Tenth and Other Amendments of the United States Constitution)

33.     The allegations set forth in paragraphs 1 through 29 above are repeated and re-alleged as fully set forth herein.

34.     The United States Supreme Court has found that there are certain fundamental rights emanating from the guarantees of the United States Constitution. Among those rights is the right to privacy which includes freedom from government intervention in family affairs.

35.     The actions of the government in attempting to deport Petitioner and in refraining from taking actions which would allow her to stay in the United States substantially interfere with her and her family's right to privacy.

36.     There is no compelling government interest for the BICE's interference in this case since Petitioner has never been convicted of any crime and by all accounts is not a flight risk or danger to the community.

37.     Petitioner, her children and husband have been injured and damaged by the government's interference with their right to privacy in that they might be separated and would be subjected to additional substantial hardships if Petitioner were removed from the United States.

## COUNT III

(Statutory Claim)

38.     The allegations set forth in paragraphs 1 through 29 above are repeated and re-alleged as fully set forth herein.

39.     The BICE is illegally detaining Petition because 8 U.S.C.S §1226(a) does not allow the BICE to apply the statute in such a manner that it in effect allows the government to detain a non-criminal the same as they would a criminal under 8 U.S.C.S. §1226(c).

## COUNT IV

### (Due Process Violation)

40.     The allegations set forth in paragraphs 1 through 29 above are repeated and re-alleged as fully set forth herein.

41.     Section 1226(a) violates Petitioner's right to substantive and procedural due process by allowing for indefinite detentions without requiring an individualized hearing on the merits of the detention or a bond hearing.

42.     Petitioner, her husband and her children have been injured and damaged by the defendant's interference with their marriage in that they have been separated over 6 months and might be separated for at least 10 years and would be subjected to additional substantial hardships if Petitioner were removed from the United States.


### PRAYER FOR RELIEF


WHEREFORE, Petitioner prays that this Honorable Court:

I.     Issue an order prohibiting the BICE from detaining Petitioner pending the resolution of this case and her appeal pending with the BIA and allowing her to stay in the United States until such time as a decision is rendered by this Court after a full review of the merits of this case and after a full review of the merits of the appeal pending with the BIA..

II.     Issue an order to the BICE to provide Petitioner with a bond and a parole hearing that weighs the merits of the detention and enjoin the BICE from continuing to detain Petitioner unless it provides her with such a hearing.

III.     Issue and order compelling Defendants to remedy the procedural problems set forth above.

IV.     Grant Petitioner her attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §2412.

V.     Grant any other and further relief that this Court may deem fit and proper

Respectfully submitted,

_____

Richard H. Trais, Attorney for the Petitioner

8

(Lina Daqa v. Department of Homeland Security, et al)

## EXHIBIT LIST

**Exhibit**                                                              **Tab**

1.      Birth Certificate of Petitioner, Lina Daqa.........................      1

2.      Spouse, Abdel Raouf Daqqa's Removal hearing notice.........      2

3.      Child's birth certificate (Jinan)......................................      3

4.      Child's birth certificate (Majd)....................................      4

5.      Passport of Petitioner, Lina Daqa.................................      5

6.      Finding of Credible fear for Petitioner, Lina Daqa..............      6

7.      Notice to Appear issued to Lina Daqa............................      7

8.      Lina Daqa's three parole requests.................................      8

9.      BICE's denial of two of Lina Daqa's parole requests..........      9

10.     November 07, 2003, Immigration Judge's initial decision.........      10

11.     January 07, 2004, Immigration Judge's decision on motions.      11

12.     Notice of Appeal for Lina Daqa to the BIA.....................      12

13.     Reference material: International Court of Justice hearing.....      13
        and U.N. report regarding legality of Israel border fence.

14.     Media reports regarding support for Lina Daqa's release......      14

Richard H. Trais
Attorney at Law
2523 W. Lawrence Ave.
Chicago, Illinois 60625
(773) 878-8050   (773) 878-8555 Fax

*EXHIBIT 1*

**Palestinian Authority**  السلطة الفلسطينية

**Ministry of Interior**  وزارة الداخلية

**Department of Civil Affairs**  مديرية الأحوال المدنية



شهادة ميلاد

# Birth Certificate

| | | |
|---|---|---|
| | 9  8433415  1 | رقم الهوية<br>Id No. |
| محمد لطفي | إسم الأب<br>Father's name | لينا | الإسم<br>Name |
| الكفري | إسم العائلة<br>Family name | صالح | إسم الجد<br>G.F.'s name |
| مسلمة | الديانة<br>Religion | أنثى | الجنس<br>Sex |
| الحادي عشر من شهر كانون الأول لعام ألف وتسعمائة أربع وسبعين | 1974/12/11 | تاريخ الميلاد<br>D. of birth |
| في البيت | المستشفى<br>Hospital | نابلس | مكان الميلاد<br>P. of birth |
| | | فلسطينية | الجنسية<br>Nationality |
| اسعد | عائلة الأم<br>M.'s family | هنا | إسم الأم<br>M.'s name |
| | س54/ص78  0 – 0 | عتيل | العنوان<br>Address |

إن التفاصيل المدونة بولادة المذكور أعلاه أدرجت في سجل الولادة لسنة 1974

The details about the above mentioned birth have already been registered in the birth file of year 1974

من قبل مديرية الأحوال المدنية بـ  نابلس  بتاريخ  2000/05/23

by Department of Civil Affairs in  **Nablus**  On  23/05/2000

توقيع
الموظف المختص



*EXHIBIT 2*

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
55 EAST MONROE ST., SUITE 1900
CHICAGO, IL   60603

RE:   DAQQA, ABDEL RAOUF
FILE:   A95-925-349

DATE:   Jul 28, 2003

TO:      DAQQA, ABDEL RAOUF
         8569 WEST 101 TERRACE #311
         PALOS HILLS, IL   60654

*notice given to atty*
*Richard Irais*

Please take notice that the above captioned case has been scheduled for a Master/____ hearing before the Immigration Court on __1/29/04__ at __3:02pm__ at

55 EAST MONROE ST., COURTROOM F
CHICAGO, IL   60603

You may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is authorized and qualified to represent persons before an Immigration Court. Your hearing date has not been scheduled earlier than 10 days from the date of service of the Notice to Appear in order to permit you the opportunity to obtain an attorney or representative. If you wish to be represented, your attorney or representative must appear with you at the hearing prepared to proceed. You can request an earlier hearing in writing.

Failure to appear at your hearing except for exceptional circumstances result in one or more of the following actions:
1) You may be taken into custody by the Immigration and Naturalization Iceland held for further action.
2) Your hearing may be held in your absence under section 240(b)(5) of the gration and Nationality Act. An order of removal will be entered against if the Immigration and Naturalization Service established by clear, quivical and convincing evidence that a) you or your attorney has been vided this notice and b) you are removable.

YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT CORRECT, hin FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE D THE IMMIGRATION COURT CACU IL THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR EPHO NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS. ERYTI E YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE RT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM E COURT WHERE YOU ARE SCHEDULED TO APPEAR. IN THE EVENT YOU ARE UNABLE TO TAIN FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW DRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE ADDRESS." CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE NT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED FFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

A list of Free Legal Service Providers has been given to you. For nformation regarding the status of your case, call toll free 1-800-898-7180 R 703-305-1662.

AS

Palestinian Authority

Ministry of Interior

Department of Civil Affairs

مديرية الأحوال المدنية

EXHIBIT 3

## Birth Certificate

| | | | |
|---|---|---|---|
| Id No. | 4 0424665 4 | | |
| Name | **Jinan** | Father's name | **Abdel Raouf** |
| G.F.'s name | **Saleem** | Family name | **Daqqa** |
| Sex | **Female** | Religion | **Moslem** |
| D. of birth | 15/10/1998 | The Fifteenth of October Nineteen hundreds Ninty Eight | |
| P. of birth | **Nablus** | Hospital | **Anglo-Arab** |
| Nationality | **Palestinian** | | |
| M.'s name | **Lina** | M.'s family | **Kafri** |
| Address | **Ateel** | 0  0 - 0 | |

The details about the above mentioned birth have already been registered in the birth file of year     199

by Department of Civil Affairs in          **Tulkarem**          on          04/04/2001

توقيع

الموظف المختص



EXHIBIT 4

# STATE OF MARYLAND

DEPARTMENT OF HEALTH AND MENTAL HYGIENE
DIVISION OF VITAL RECORDS
CERTIFICATE OF LIVE BIRTH

CERTIFICATION OF VITAL RECORD

**STATE FILE NUMBER:** 2000-38695

**NAME:** MAJD ABDEL-RAOUF DAQQA

**DATE OF BIRTH:** JULY 24, 2000

**PLACE OF BIRTH:** HOWARD

**MAIDEN NAME OF MOTHER:** LINA M-LUTFI KAFRI

**MOTHER'S PLACE OF BIRTH:** * * * * * * * * * * * * * *

**NAME OF FATHER:** ABDEL-RAOUF DAQQA

**FATHER'S PLACE OF BIRTH:** * * * * * * * * * * * * * *

**DATE RECORD FILED:** JULY 27, 2000

**SEX:** MALE

**WEIGHT:** 7 LBS 1 OZ

**TIME:** 05:09 AM

**AGE:** 25

**AGE:** 31

**DATE ISSUED:** 09-11-2000

I HEREBY CERTIFY THAT THIS DOCUMENT IS A TRUE COPY OF A RECORD ON FILE IN THE DIVISION OF VITAL RECORDS.

STATE REGISTRAR

DO NOT ACCEPT UNLESS ON SECURITY PAPER WITH SEAL OF VITAL RECORDS CLEARLY EMBOSSED

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

EXHIBIT 5



السلطة الفلسطينية

**THE PALESTINIAN AUTHORITY**

هذا الجواز صادر بناء على اتفاقية الحكومة الذاتية الفلسطينية

وفقا لاتفاقية اوسلو الموقعة في واشنطن في ١٣ سبتمبر ١٩٩٣.

يرجى من ذوي الشأن السماح لحامل هذا الجواز المرور بدون أي
تأخير أو إعاقة وعند الضرورة حمايته وتقديم المساعدة له.

THIS PASSPORT/TRAVEL DOCUMENT IS ISSUED PERSUANT TO
THE PALESTINIAN SELF GOVERNMENT AGREEMENT ACCORD-
ING TO OSLO AGREEMENT SIGNED IN WASHINGTON ON
13/9/1993.
IT IS REQUIRED FROM ALL THOSE WHOM IT MIGHT CONCERN
TO ALLOW THE BEARER OF THIS PASSPORT/TRAVEL DOCUMENT
TO PASS FREELY WITHOUT LET OR HINDRANCE AND TO AFFORD
HIM (HER) SUCH ASSISTANCE AND PROTECTION AS MAY BE
NECESSARY.

MINISTER OF THE INTERIOR

OR

DIRECTOR GENERAL OF
CIVIL REGISTRATION AND
PASSPORT DEPARTMENT

---

PASSPORT جواز سفر
TRAVEL DOCUMENT

1128413



LINA M S DAQA

HANA

984334151

11-12-1974

NABLUS

Female

30-03-2006

CO:EMPLOYEE

HANA | FULL NAME الاسم الكامل

984334151 | MOTHER NAME اسم الأم

1974-12-11 | DATE OF BIRTH تاريخ الميلاد

2006-03-30 | PLACE OF BIRTH محل الميلاد

| DATE OF EXPIRY تاريخ الانتهاء

PROFESSION المهنة

P<PSLINA<M<S<DAQA<<HANA<<<<<<<<<<<<<<<<<<
1128413<<2PSE7412110F0603308984334151<<<<82

صالح لجميع الأقطار

## VALID FOR ALL COUNTRIES

NOTES          ملاحظات

**GAZA** غـــزة    مكان الاصدار
PLACE OF ISSUE

3 1 03 2003    تاريخ الاصدار
DATE OF ISSUE

التوقيع
SIGNATURE

ADDRESS العنوان

SIGNATURE OF THE BEARER
توقيع حامل الجواز

الأطفال CHILDREN

| الجنس<br>SEX | مكان الولادة<br>PLACE OF BIRTH | تاريخ الولادة<br>DATE OF BIRTH | الاسم<br>NAME |
|---|---|---|---|
| | | | |

التجديدات

RENEWALS

مدد هذا الجواز لغاية

THIS PASSPORT/TRAVEL DOCUMENT IS RENEWED UNTIL

المكان والتاريخ

PLACE AND DATE

التجديدات

RENEWALS

مدد هذا الجواز لغاية

THIS PASSPORT/TRAVEL DOCUMENT IS RENEWED UNTIL

المكان والتاريخ

PLACE AND DATE



تأشيرات VISAS                                     تأشيرات VISAS

APPLICATION WITHDRAWN
I-275 Executed.
Subject to depart
foreign via ____ at ____
Subject placed in
custody of ____

1128413                                   1128413



تأشيرات VISAS

تأشيرات VISAS

1128413

1128413

تعليمـات

هذا الجواز ذو شأن عظيم يوجب على حامبه الاحتياط التام حتى لا يقع في
حوزة شخص ليس له الحق في حمله او استعماله.
واذا تلف او تلف تجب على الفور ابلاغ اقرب سلطة فلسطينية او هيئة
عهد اليها بذلك. ولا يصدر جواز جديد الا بعد فحص وتمحيص كاملين.
هذا الجواز وطالما انه ساري المفعول يخق لحامله عند العودة من الخارج
دخول اراضي السلطة الفلسطينية.
يحظر عليك اضافة او تغيير اي شيء في هذا الجواز.
عند استلامك هذا الجواز ضع توقيعك الكامل في الصفحة الثانية.

## INSTRUCTIONS

THIS PASSPORT/TRAVEL DOCUMENT IS OF A GREAT
VALUE THAT REQUIRES FROM ITS BEARER THE
UTMOST ATTENTION TO PREVENT IT FROM BEING
CARRIED OR USED BY AN UNAUTHORIZED PERSON.
IN CASE OF LOSS OR DAMAGE YOU SHOULD REPORT
TO THE NEAREST PALESTINIAN AUTHORITHY, A NEW
PASSPORT/TRAVEL DOCUMENT WILL NOT BE ISSUED
UNTIL THOROUGH INVESTIGATION.
THIS PASSPORT/TRAVEL DOCUMENT, AS LONG AS IT
IS VALID, WILL ENABLE ITS BEARER ON RETURN FROM
ABROAD TO ENTER THE AREA OF THE PALESTINIAN
AUTHORITY.
IT IS FORBIDDEN TO ADD OR CHANGE ANYTHING IN
THIS PASSPORT/TRAVEL DOCUMENT.

هذا الجواز يحتوي على ٤٨ صفحة
This passport/travel document contains 48 pages

تأشيرات VISAS

صدر بدلاً عن الجواز رقم ٦٦٦٦٦
Replacement Of Passport No. ٠٧٤٧٧٢٦

ALLENBY
BORDER CONTROL
EXIT
29-05-2003
12

1128413



THE AMERICAN
CONSULATE GENERAL
JERUSALEM

№ 0922

JUN 16 2000





السلطة الفلسطينية
# THE PALESTINIAN AUTHORITY

PASSPORT
TRAVEL DOCUMENT

0747226

LINA M S DAQA — FULL NAME

HANA — MOTHER NAME

984334151

11-12-1974 — DATE OF BIRTH

NABLUS — PLACE OF BIRTH

Female — SEX

30-05-2003 — DATE OF EXPIRY

GOVT EMPLOYEE — PROFESSION

984334151
1974-12-11
2003-05-30

THIS PASSPORT/TRAVEL DOCUMENT IS ISSUED PERSUANT TO
THE PALESTINIAN SELF GOVERNMENT AGREEMENT ACCORD-
ING TO OSLO AGREEMENT SIGNED IN WASHINGTON ON
13/9/1993.
IT IS REQUIRED FROM ALL THOSE WHOM IT MIGHT CONCERN
TO ALLOW THE BEARER OF THIS PASSPORT/TRAVEL DOCUMENT
TO PASS FREELY WITHOUT LET OR HINDRANCE AND AFFORD
HIM (HER) SUCH ASSISTANCE AND PROTECTION AS MAY BE
NECESSARY.
MINISTER OF THE INTERIOR
OR
DIRECTOR GENERAL OF
CIVIL REGISTRATION AND
PASSPORT DEPARTMENT

P<PS<LINA<M<S<DAQA<<HANA<<<<<<<<<<<<<<<<<
0747226<<4PSE7412110F0305035984334151<<<<8



صالح لجميع الأقطار

**VALID FOR ALL COUNTRIES**

NOTES

ملاحظات

مكان الاصدار
PLACE OF ISSUE ..... GAZA .....

تاريخ الاصدار
DATE OF ISSUE ..... 3.1 .05 .2000 .....

التوقيع
SIGNATURE

ADDRESS

العنوان

SIGNATURE OF THE BEARER

| CHILDREN | | | الاطفال |
|---|---|---|---|
| الجنس | مكان الولادة | تاريخ الولادة | الاسم |
| SEX | PLACE OF BIRTH | DATE OF BIRTH | NAME |

التجديدات

RENEWALS

مدة هذا الجواز لغاية

THIS PASSPORT/TRAVEL DOCUMENT IS RENEWED UNTIL

المكان والتاريخ

PLACE AND DATE

التجديدات

RENEWALS

مدة هذا الجواز لغاية

THIS PASSPORT/TRAVEL DOCUMENT IS RENEWED UNTIL

المكان والتاريخ

PLACE AND DATE



تأشيرات VISAS

VISAS تأشيرات



BEN GURION BORDER CONTROL
ביקורת הגבולות נמל התעופה בן גוריון
06 -07- 2000
EXIT יציאה
28



EXIT יציאה
ALLENBY
BORDER CONTROL
ביקורת הגבולות
12 -07- 2001
8

16 JUL 2001

BEN GURION BORDER CONTROL
ביקורת הגבולות נמל התעופה בן גוריון
24 -09- 2000
ENTRY כניסה
21

0747226

0747226

تأشيرات VISAS

تأشيرات VISAS

0747226

0747226

تأشيرات VISAS

تأشيرات VISAS

בקורת גבולות אלנבי
ALLENBY BORDER CONTROL

1 6 -01- 2003

ENTRY (25) כניסה

0747226

0747226

Case: 1:04-cv-00778 Document #: 1 Filed: 01/30/04 Page 28 of 83 PageID #:28



تعليمات

هذا الجواز ذو شان عظيم يوجب على صاحبه الاحتياط التام حتى لا يقع في
حوزة شخص ليس له الحق في حمله او استعماله.
وإذا فقد او تلف فيجب على الفور ابلاغ اقرب سلطة فلسطينية او هيئة
عند اليها بذلك. ولا يصدر جواز جديد الا بعد...وتفحص كامل.
هذا الجواز وطالما انه ساري المفعول يمكن لحامله...بالعودة خارج
دخول اراضي السلطة الفلسطينية
يحظر عليك اضافة او تغيير اي شيء في هذا الجواز.
عند استلامك هذا الجواز ضع توقيعك الكامل في الصفحة الثانية.

# INSTRUCTIONS

THIS PASSPORT/TRAVEL DOCUMENT IS OF A GREAT
VALUE THAT REQUIRES FROM ITS BEARER THE
UTMOST ATTENTION TO PREVENT IT FROM BEING
CARRIED OR USED BY AN UNAUTHORIZED PERSON.
IN CASE OF LOSS OR DAMAGE YOU SHOULD REPORT
TO THE NEAREST PALESTINIAN AUTHORITHY. A NEW
PASSPORT/TRAVEL DOCUMENT WILL NOT BE ISSUED
UNTIL THOROUGH INVESTIGATION.
THIS PASSPORT/TRAVEL DOCUMENT, AS LONG AS IT
IS VALID, WILL ENABLE ITS BEARER ON RETURN FROM
ABROAD TO ENTER THE AREA OF THE PALESTINIAN
AUTHORITY.
IT IS FORBIDDEN TO ADD OR CHANGE ANYTHING IN
THIS PASSPORT/TRAVEL DOCUMENT.

هذا الجواز يحتوي على ٤٨ صفحة

This passport/travel document contains 48 pages

تأشيرات VISAS



0747226

Alien's File Number: 45 925 3478

☒ At the conclusion of the interview, the asylum officer must read the following to applicant:

If the Immigration and Naturalization Service determines you have a credible fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Immigration and Naturalization Service District Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. *If the asylum officer determines that you do not have a credible fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and you do not request review, you may be removed from the United States as soon as travel arrangements can be made. Do you have any questions?*

We are exposed to killing every day.

****Typed Question and Answer (Q&A) interview notes and a summary and analysis of the claim must be attached to this form for all negative credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issue and that the applicant was given every opportunity to establish a credible fear.

## SECTION IV:                                CREDIBLE FEAR FINDINGS

### A.      Credible Fear Determination:

Credibility

4.1 ☒ There is a significant possibility that the assertions underlying the applicant's claim could be found credible in a full asylum or withholding of removal hearing.

4.2 ☐ Applicant found not credible because (check boxes 4.3-4.5, which apply):

4.3 ☐ Testimony was internally inconsistent on material issues.

4.4 ☐ Testimony lacked sufficient detail on material issues.

4.5 ☐ Testimony was not consistent with country conditions on material issues.

Nexus

4.6 ☐ Race     4.7 ☐ Religion     4.8 ☐ Nationality     4.9 ☐ Membership in a Particular Social Group
(Define the social group): _____ Tribal men _____

4.10 ☒ Political Opinion     4.11 ☐ Coercive Family Planning [CFP]     4.12 ☐ No Nexus

Credible Fear Finding

4.13 ☒ Credible fear of persecution established.
     OR

4.14 ☐ Credible fear of torture established.
     OR

4.15 ☐ Credible fear of persecution NOT established and there is not a significant possibility that the applicant could establish eligibility for withholding of removal or deferral of removal under the Convention against Torture.

### B.      Possible Bars:

4.16 ☐ Applicant could be subject to a bar(s) to asylum or withholding of removal (check the box(es) that applies and explain on the continuation sheet):

4.17 ☐ Particularly Serious Crime     4.18 ☐ Security Risk     4.19 ☐ Aggravated Felon

4.20 ☐ Persecutor     4.21 ☐ Terrorist     4.22 ☐ Firmly Resettled

4.23 ☐ Serious Non-Political Crime Outside the United States

4.24 ☒ Applicant does not appear to be subject to a bar(s) to asylum or withholding of removal.

Alien's File Number: 95 92 5 3478

**Identity:**

☒ Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

4.26   ☐ Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty).

4.27   ☐ Passport which appears to be authentic.

4.28   ☐ Other evidence presented by applicant or in applicant's file (List): _____

29   ☐ Applicant's identity was not determined with a reasonable degree of certainty. (Explain on the continuation sheet.)

ECTION V:    ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES

5.1   Steve McCollum     5.2   _McCollum_     5.3   06 02 03
Asylum officer name and ID CODE (print)     Asylum officer's signature     Decision date

5.4   _____     5.5   _____     5.6   ___/___/___
Supervisory asylum officer name     Supervisor's signature     Date supervisor approved decision

## ADDITIONAL INFORMATION/CONTINUATION

Q Have you or any family member ever been harmed or mistreated because of your religion?

R: No.

Q Have you or any family member ever been harmed or mistreated because you belonged to a revolutionary group or political organization?

R: No.

Q Have you or any member ever been mistreated because of your race?

R: Our property by the border was taken by the Isralis because we were palisdnian.

Q Have you or any member of your family ever been mistreated because of your nationality?

R: No.

Q Have you or any family member ever been harmed or mistreated because of your membership in a particular social group.

R: Yes, the fighting around us and constant fear is unbereable.

U. S. Department of Justice
Immigration and Naturalization Service

**Notice to EOIR: Alien Address**

Date: __June 2, 2003__

File No: __A095 925 349__
Case No: __CHI0306000056__

To: Office of the Immigration Judge
Executive Office for Immigration Review

From: Office of the District Director
Immigration and Naturalization Service

Respondent: __Abdel Raouf DAQQA__

---

**This is to notify you that this respondent is:**

☐ Currently incarcerated by other than INS. A charging document has been served on the respondent and an Immigration Detainer- Notice of Action by the INS (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

His/her anticipated release date is: _____

☐ Currently detained by INS at: _____

☐ Currently detained by INS and transferred this date to a new location: _____

INS motion for change of venue attached. ☐ Yes ☒ No

☒ Released from INS custody on the following condition(s):

   ☐ Personal recognizance

   ☒ Order of recognizance (Form I-220A)

   ☐ Bond in the amount of $ _____   ☐ Surety bond  ☐ Cash bond

   ☐ Other _____

☒ Upon release from INS custody, the respondent reported his/her address and telephone number will be:

8869 W. 101 TERRACE # 311, PALOS HILLS, IL 60454
708-430-0243

☒ Upon release from INS custody, the respondent was reminded of the requirements contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR change of address from (EOIR-33).

_____
(Signature of INS official)

__SENIOR Immigration Inspector__
(Title of INS official)

__JEFF TORAND__
(Printed name of INS official)

__CHI / ORD__
(Location)

U.S. Department of Justice
Immigration and Naturalization Service

# Record of Determination/Credible Fear Worksheet

| C H 1 | | Z C N | 9 5 9 2 5 3 4 7 | Daga |
|---|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | | Alien's Last/ Family Name |
| McCollum | Charce | Stateless | | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | | |

*All statements in italics must be read to the applicant*

## SECTION I:                          INTERVIEW PREPARATION

1.1  05/31/03
Date of arrival [MM/DD/YY]

1.2  C H 1
Port of arrival

1.3  05/31/03
Date of detention [MM/DD/YY]

1.4  C H 1
Place of detention

1.5  05/31/03
Date of AO orientation [MM/DD/YY]

1.6  Resources

1.7  06/09/03
Date of interview [MM/DD/YY]

1.8  Broadview, IL
Interview site

If orientation more than one week from date of detention, explain delay

1.9  ☒ Applicant received and signed Form M-444 and relevant *pro bono* list on   06/02/03
Date signed [MM/DD/YY]

1.10  Does applicant have consultant(s)?   ☒ Yes   ☐ No

1.11  If yes, consultant(s) name, address, telephone number and relationship to applicant
Richard Trais, 2523 W. Lawrence Ave.
Chicago, IL 60625

1.12  Persons present at the interview (check which apply)

1.13  ☐   Consultant(s)

1.14  ☐   Other(s), list:

1.15  ☐   No one other than applicant and asylum officer

1.16  Language used by applicant in interview:   Arabic

1.17  STF 208233   ☐ Yes   ☐ No   1605   11:00
Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.18  _____   ☐ Yes   ☐ No   _____   _____
Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.19  _____   ☐ Yes   ☐ No   _____   _____
Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.20  ☒ Interpreter was not changed during the interview

1.21  ☐ Interpreter was changed during the interview for the following reason(s):

1.22  ☐ Applicant requested a female interpreter replace a male interpreter, or *vice versa*

1.23  ☐ Applicant found interpreter was not competent   1.24  ☐ Applicant found interpreter was not neutral

1.25  ☐ Officer found interpreter was not competent   1.26. ☐ Officer found interpreter was not neutral

1.27  ☐ Bad telephone connection

1.28  ☒ Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

Form I-870 (Rev. 01/19/01) N Page 1

Alien's File Number: 9 5 9 2 5 3 4 7 8

**SECTION II:**  BIOGRAPHIC INFORMATION

2.1  DAQA

Last Name/ Family Name [ALL CAPS]

2.2  LINA  2.3

First Name  Middle Name

2.4  11/24/74  2.5  Gender ☐ Male ☒ Female

Date of birth [MM/DD/YY]

2.6

Other names and dates of birth used

2.7  Occupied Territorie  2.8  Stateless

Country of birth  Country (countries) of citizenship (list all)

2.9  Nahlous, Occupied Territories

Address prior to coming to the U.S. (List Address, City/Town, Province, State, Department and Country).

2.10  Arab  2.11  Moslem  2.12  Arabic

Applicant's race or ethnicity  Applicant's religion  All languages spoken by applicant

2.13  Marital status:  ☐ Single  ☒ Married  ☐ Legally separated  ☐ Divorced  ☐ Widowed

2.14  Did spouse arrive with applicant?  ☐ Yes  ☒ No

2.15  Is spouse included in applicant's claim?  ☐ Yes  ☐ No

2.16  If currently married (including common law marriage) list spouse's name, citizenship, and present location (if with applicant, provide A-Number):  Abed Raouf Daqq

2.17  Children:  ☒ Yes  ☐ No

2.18  List any children (*Use the continuation section to list any additional children*):

| Date of birth (MM/DD/YY) | Name | Citizenship | Present location (if w/PA, list A-Numbers) | Did child arrive with PA? | | Is child included in PA's claim? | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| 10/15/98 | Jenay Daqq | Stateless | c+H | ☒ Yes | ☐ No | ☒ Yes | ☐ No |
| 7/24/00 | Majd Daqq | USA | c+H | ☒ Yes | ☐ No | ☐ Yes | ☒ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |

Alien's File Number: 95 925 3478

2.19  Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication(s) that a medical condition exists? If YES, answer questions 2.20 and 2.21 and explain below.  ☐ Yes  ☒ No

2.20  Has applicant notified the facility of medical condition?  ☐ Yes  ☐ No

2.21  Does applicant claim that the medical condition relates to torture?  ☐ Yes  ☐ No

2.22  Does the applicant have a relative, sponsor or other community ties, including spouse or child already listed above?  ☐ Yes  ☐ No

2.23  If YES, provide information on relative or sponsor (use continuation section, if necessary):

Jihad Kasri _____ Brother

Name _____ Relationship

Virginia _____ unknown

Address _____ Telephone Number

☒ Citizen  ☐ Legal Permanent Resident  ☐ Other

## SECTION III:                    CREDIBLE FEAR INTERVIEW

The asylum officer must elicit all information related to both credible fear of persecution and credible fear of torture. Even if the asylum officer determines in the course of the interview that the applicant has a credible fear of persecution, the asylum officer must still elicit any additional information relevant to a fear of torture. Asylum officers are to ask the following questions and may use the continuation sheet if additional space is required. If the applicant replies YES to any question, the asylum officer must ask follow-up questions to elicit sufficient details about the claim in order to make a credible fear determination.

3.1  a. *Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned?*

☒ Yes  ☐ No  My brother was put in an Isreali prison in 1984
I don't know why he was arrested; he served 5 years. He was
threaten by (3/03) 4 masked men told her to stay in the area,
wear a vic'? and have her husband return from the USA
to help with the Right against Isreal

b. *Do you have any reason to fear harm from anyone in any country to which you may be returned?*

☒ Yes  ☐ No

Fears recrutment of her son (Hamas) as a bomber, the
situation (civil war) danger/war and vulerable, we
could be killed by either side by just be ny [ ]

c. IF YES to questions *a* and/or *b*, was it or is it because of any of the following reasons? (Check each of the following boxes that apply).

☐ Race  ☐ Religion  ☐ Nationality  ☒ Membership in a particular social group  ☒ Political Opinion

Imputed PO

**U. S. Department of Justice**
Immigration and Naturalization Service

Notice to A *EXHIBIT*

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No: ___A95925347___

In the Matter of:

Respondent:  __DAQA, Lina_____          currently residing at:

__C/O I.N.S. Chicago District Office, 10 W. Jackson, Chicago IL  60604__          ____(000) 000-0000____
(Number, street, city, state and Zip code)          (Area code and phone number)

[X] 1. You are an arriving alien.

[ ] 2. You are an alien present in the United States who has not been admitted or paroled.

[ ] 3. You have been admitted to the United States, but are deportable for the reasons stated below.
The Service Alleges that you:                              *Petitioner Auth*

1.   You are not a national or citizen of the United States;   *occupied territories / Israel*
2.   You are a native and a citizen of Iraq;
3.   You are ineligible for admission to the United States because: at the time of your admission to the United States, you were not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration Nationality Act, to wit:  immigrant without visa and/or you are subject to removal, in that: at the time of your application for admission, you were not in possession of a valid unexpired passport, or other suitable travel document, or document of identity or nationality,

*despite*      *PA /*

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

1.   Section 212 (a) (7) (A) (i) (I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211 (a) of the Act.

[X] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.
[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8 CFR 208.30(f)(2)   [ ] 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an Immigration Judge of the United States Department of Justice at: _____
_____55 East Monroe St., Suite 1900, Chicago IL  60603_____
(Complete Address of Immigration Court, Including Room Number, if any)

on  __DATE AND TIME TO BE CALENDARED__  to show why you should not be removed from the United States based on the  charge(s) set forth above.

(Signature and Title of Issuing Officer)

Date:  __6/18/2003__                    _____CHICAGO, IL_____
(City and State)

**See reverse for important information**

Form I-862 (Rev 4-1-97)

# RICHARD H. TRAIS
### ATTORNEY AT LAW

June 26, 2003

Department of Homeland Security
Bureau of Citizenship and Immigration Services
10 W. Jackson
Chicago, Illinois 60604

**Re: Request for parole for Lina Daqa  A 095 925 349**

Dear Sir/Madam,

I represent the above name detainee, Lina Daqa, and I have enclosed the form G-28. I am respectfully requesting that Lina Daqa be paroled into the United States, pending her political asylum application. Lina Daqa was found to have credible fear of returning to the West Bank and has been issued a Notice to Appear. The hearing before the immigration judge has not yet been scheduled. Her husband, Abdel Raouf Daqqa, A 095 925 349, has also been issued a notice to appear and a hearing before the immigration judge has not been scheduled. He is not detained.

The Daqqas have two children, a daughter named Jenan A. S. Daqa, born on October 15, 1998, and a son named Majd Abdel-Raouf Daqqa, born on July 24, 2000, who is a United States citizen. The following is an outline of their residence, employment, education and means of financial support that I hope is hopeful in making your decision:

Lina Daqa intends to reside with her husband and two children at 8569 W. 101 Terrace Apt#311 Palos Hills, Illinois.  She arrived in the United States on May 3, 2003. Before her arrival, she had resided in the occupied territories of the West Bank, which has witnessed increasing severe hostility between the Palestinians and Israelis. She graduated from Attil High School in the West Bank in 1993. She finished her first semester of the Science Program in the Beri Zeit University in 1993, but was unable to pursue her career in science due to the closing of the University as a result of the uprisings and conflicts in the West Bank. She then completed her studies in another university and obtained a Bachelors Degree in Economics in 1998. Lina Daqa worked under the Palestinian Authority for 2 years after her graduation.

In the past, she had visited her siblings in the United States twice, once in July of 2000 and then July of 2001. Upon her return to the West Bank in October 2000, Lina Daqa experienced worsened living conditions and immense hardship by the government, which resulted in her loss of job and her son's contraction of asthma. Due to the lack of treatment available for her son in the West Bank, she made her second visit to the United States on July 16, 2001 with her family. Upon her return to the West Bank, she experienced even worse treatment than before, and her life was constantly in danger by Israelis and Palestinian fundamentalist groups. She was under immense pressure by the Palestinian fundamentalist parties to wear a veil and cover her head and to have her family and herself engage in fighting for her land and religion. After her refusal to fight and wear a veil, she and her children's lives were constantly threatened. Moreover, it was significantly difficult to obtain any medical treatment or hospitalization for her children in need. She left the West Bank in May of 2003 to seek a safer life in the United States.

Both Lina Daqa and Abdel Raouf Daqqa are currently being financially supported by Lina's brother, Jehad Kafri, and her brother-in-law, Yousef Hijji. They are willing to provide her complete financial support with all other necessities. It is very difficult for Mr. Daqqa to take care of the children without Mrs. Daqa's help and support. It would relieve a great emotional and logistic burden upon the family if Mrs. Daqa were paroled into the United states. She is a very responsible person who will attend all court hearings and obey all orders of court as well as the Bureau of Citizenship and Immigration Service.

I have attached the following documents in support of Mrs. Daqa's application for parole.

Please advise me of your decision regarding this matter and contact me if I can be of any assistance.

Thank you for your consideration.

Sincerely,

Richard H. Trais

# RICHARD H. TRAIS
ATTORNEY-AT-LAW

August 01, 2003

Department of Homeland Security
BICE/BCIS
10 W. Jackson
Chicago, Illinois 60604

Re: 2nd Request for Parole for LINA DAQA    A# 095 925 347

Dear Sir or Madam,

I represent the above named detainee, Lina Daqa, and I have previously
filed the form G-28. I am making a 2nd request for parole for Lina
Daqa. I have attached a letter from Senator Dick Durbin as well as
medical reports regarding the medical condition of the applicant's
spouse and child which support her request for release from custody.

Your office's previous denial was not based upon her being a flight
risk or posing a danger to the community. Your response questioned the
credibility of the applicant regarding her proposed application for
political asylum in the United States. However, she was
interviewed at length and found to have credible fear. Her
spouse, Abdel Raouf Daqqa, A# 095 925 349, has "registered" with your
office and has attended one of his immigration court hearings. His next
scheduled hearing is January, 2004.

I have also attached Lina Daqa's asylum application filed with
The immigration court on August 01, 2003.

        Thank you for your consideration in reviewing this matter.

Sincerely,

Richard Trais

2523 W. LAWRENCE AVE. • CHICAGO, ILLINOIS • 60625
PHONE: 773.878.8050 • FAX: 773.878.8555

# RICHARD H. TRAIS
### ATTORNEY-AT-LAW
2523 W. Lawrence. Chicago, IL 60625

773.878.8050  FAX: 773.878.8555

November 26, 2003

Department of Homeland Security
BICE/BCIS
10 W. Jackson
Chicago, Illinois  60604

Re:   3rd Request for Parole for LINA DAQA    A#  095 925 347

Dear Sir or Madam,

I represent the above named detainee, Lina Daqa, and I have
previously filed the form G-28.  I am making a 3rd request for parole
for Lina Daqa.  I have attached the opinion of the Immigration judge
dated November 7, 2003 for your review.  In that opinion the Immigration
Judge found Lina Daqa's testimony to be credible. "There are no
significant discrepancies between the testimony and the documentary
evidence in support of her claim.  Thus the court finds the respondent
credible."

Your previous denial questioned the credibility of the applicant
regarding her proposed application for political asylum in the United
States.  In addition to the Immigration Judge finding Ms. Daqa credible
she has been interviewed at length and found to have credible fear.

Also, Ms.Daqa has filed a Motion to Reconsider and a Motion to
Reopen her case. In light of the respondent seeking review of her asylum
claim and intent to exercise her appellant rights it appears that the
ultimate disposition of Ms. Daqa's asylum claim will not be rendered for
many more months. Ms. Daqa's incarceration has already been quite
lengthy and has caused tremendous hardship on her, her young children
and her husband.

Ms.Daqa is not a flight risk or a danger to the community.  Your
office's previous denial was not based upon her being a flight risk or
posing a danger to the community, but rather, that her claim was
"suspect".  The immigration judge's finding that her testimony was
credible severely undermines any "suspicious nature" to her claim.

2003 NOV 28  PM 2 19

-2-                                                                November 26, 2003

Ms. Daqa's intent is and always has been to comply with the law. Her spouse, Abdel Raouf Daqqa, A# 095 925 349, has "registered" with your office and has attended one of his immigration court hearings. His next scheduled hearing is in January, 2004.

Thank you for your consideration in reviewing this matter.

Sincerely,

Richard Trais

Cc: Eileen Matthesuis

FAX # 312 - 236 - 6378
Reen ODEH

EXHIBIT 9



**U.S. Department of Homeland Security**
Bureau of Immigration and Customs Enforce

CHI 120/11

*10 West Jackson Blvd.*
*Chicago, Illinois 60604*

JUL 10 2003

Richard H. Trais, Attorney at Law
2523 West Lawrence Ave
Chicago, Illinois 60625

RE: Lina DAQA (A95 925 347)

Dear Mr. Trais:

We have considered your client, Mrs. Lina DAQA, for release from INS custody. A review of her file indicates that she has been found inadmissible.

The decision to release or parole an individual from detention is discretionary. Under INS policy, an individual found to have a credible fear of persecution should generally be paroled. However, the individual must establish that he or she is likely to appear for all hearings or other immigration proceedings and that he or she poses no danger to the community.

At the present time, the INS must deny your request for parole for the following reasons:

_____ You have not sufficiently established your identity and therefore INS cannot be assured that you will appear for immigration proceedings and other matters as required.

_____ You have not established sufficient ties to the community that assures INS either that you have a place to reside if you are released or that you will appear as required.

_____ Based on the particular facts of your case, including manner of entry, INS cannot be assured that you will appear for immigration hearings or other matters as required.

_____ Information in your file suggests that you may be engaged in or likely to engage in criminal or other activities that may pose a danger to the community.

✓ Other: There is other sufficient information to indicate your asylum claim may be suspect.

You may renew your request for parole at any time. If you wish to renew your request, you should submit additional material that responds to the ground for denial of your present request, as identified in this letter. For example, proof of identity is routinely established through documents such as passports, birth certificates or identity cards. It can also be established through detailed affidavits that provide specific information about you, such as where you lived, who your family or clan is, who the leaders of your community are, and other specific information that will help the INS verify your nationality, clan membership or other relevant identity issue.

If you need to demonstrate that you have established community ties, you should provide specific information from relatives or other persons in the United States who are willing to provide for you and can ensure that you will appear for all immigration hearings. If the INS believes that you may pose a danger to the community, you should provide specific information about your manner of entry or activities that show that you will not pose a risk to the community.

Finally, parole may in some cases be granted on a medical condition or other urgent humanitarian need. You should include any relevant information about your health or other specific needs you may have in any subsequent request.

Sincerely,

Deborah L. Achim
Interim Field Office Director
Chicago, Illinois



**U.S. Department of Homeland Security**
Bureau of Immigration and Customs Enforcement

CHI 120/11

_10 West Jackson Blvd._
_Chicago, Illinois 60604_

AUG 2 0 2003

Richard H. Trais, Attorney at Law
2523 West Lawrence Avenue
Chicago, Illinois 60625

RE: Lina DAQA (A95 925 347)
(2nd Request)

Dear Mr. Trais:

We have considered your client, Mrs. Lina DAQA, for release from INS custody. A review of her file indicates that she has been found inadmissible.

The decision to release or parole an individual from detention is discretionary. Under INS policy, an individual found to have a credible fear of persecution should generally be paroled. However, the individual must establish that he or she is likely to appear for all hearings or other immigration proceedings and that he or she poses no danger to the community.

At the present time, the INS must deny your request for parole for the following reasons:

\_\_\_\_\_ You have not sufficiently established your identity and therefore INS cannot be assured that you will appear for immigration proceedings and other matters as required.

\_\_\_\_\_ You have not established sufficient ties to the community that assures INS either that you have a place to reside if you are released or that you will appear as required.

\_\_\_\_\_ Based on the particular facts of your case, including manner of entry, INS cannot be assured that you will appear for immigration hearings or other matters as required.

\_\_\_\_\_ Information in your file suggests that you may be engaged in or likely to engage in criminal or other activities that may pose a danger to the community.

✓ Other: There is other sufficient information to indicate your asylum claim may be suspect.

You may renew your request for parole at any time. If you wish to renew your request, you should submit additional material that responds to the ground for denial of your present request, as identified in this letter. For example, proof of identity is routinely established through documents such as passports, birth certificates or identity cards. It can also be established through detailed affidavits that provide specific information about you, such as where you lived, who your family or clan is, who the leaders of your community are, and other specific information that will help the INS verify your nationality, clan membership or other relevant identity issue.

If you need to demonstrate that you have established community ties, you should provide specific information from relatives or other persons in the United States who are willing to provide for you and can ensure that you will appear for all immigration hearings. If the INS believes that you may pose a danger to the community, you should provide specific information about your manner of entry or activities that show that you will not pose a risk to the community.

Finally, parole may in some cases be granted on a medical condition or other urgent humanitarian need. You should include any relevant information about your health or other specific needs you may have in any subsequent request.

Sincerely,

(I)DFOD

Deborah L. Achim
Interim Field Office Director
Chicago, Illinois

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
CHICAGO, ILLINOIS

EXHIBIT 10

RICHARD H. TRAIS
2523 W. LAWRENCE
CHICAGO          IL 60625

IN THE MATTER OF          FILE A 95-925-347     DATE: Nov 7, 2003
DAQA, LINA *

___ UNABLE TO FORWARD - NO ADDRESS PROVIDED

_✓_ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE.  THIS DECISION
IS FINAL UNLESS AN APPEAL IS FILED WITH THE BOARD OF IMMIGRATION APPEALS
WITHIN 30 CALENDAR DAYS OF THE DATE OF THE MAILING OF THIS WRITTEN DECISION.
SEE THE ENCLOSED FORMS AND INSTRUCTIONS FOR PROPERLY PREPARING YOUR APPEAL.
YOUR NOTICE OF APPEAL, ATTACHED DOCUMENTS, AND FEE OR FEE WAIVER REQUEST
MUST BE MAILED TO:      BOARD OF IMMIGRATION APPEALS
                        OFFICE OF THE CLERK
                        P.O. BOX 8530
                        FALLS CHURCH, VA  22041

___ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE AS THE RESULT
OF YOUR FAILURE TO APPEAR AT YOUR SCHEDULED DEPORTATION OR REMOVAL HEARING.
THIS DECISION IS FINAL UNLESS A MOTION TO REOPEN IS FILED IN ACCORDANCE
WITH SECTION 242B(c)(3) OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C.
SECTION 1252B(c)(3) IN DEPORTATION PROCEEDINGS OR SECTION 240(c)(6),
8 U.S.C. SECTION 1229a(c)(6) IN REMOVAL PROCEEDINGS.  IF YOU FILE A MOTION
TO REOPEN, YOUR MOTION MUST BE FILED WITH THIS COURT:

                        IMMIGRATION COURT
                        55 EAST MONROE ST., SUITE 1900
                        CHICAGO, IL  60603

___ OTHER: _____

                          _____
                          COURT CLERK
                          IMMIGRATION COURT                    FF
CC: MICHEAL L. HARPER, ASST. DIST. COUNSEL
    55 EAST MONROE, STE. 1700
    CHICAGO, IL  60603
MMS

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## CHICAGO, ILLINOIS

File: A95-925-347                                    Date: November 7, 2003

In the Matter of                          )
                                          )
    Lina DAQA,                        )          IN REMOVAL PROCEEDINGS
                                          )
Respondent.                               )

CHARGE:         Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C.
                § 1182(a)(7)(A)(i)(I) – Immigrant who at time of application for admission
                was not in possession of a valid unexpired immigrant visa, reentry permit,
                border crossing card, or other valid entry document.

APPLICATION:    Section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 –
                Asylum.

                Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §
                1231(b)(3) – Withholding of Removal.

                8 C.F.R. § 1208.16, Withholding of Removal under the United Nations
                Convention against Torture and Other Forms of Cruel, Inhuman or
                Degrading Treatment of Punishment ("Torture Convention").

ON BEHALF OF THE RESPONDENT              ON BEHALF OF THE DHS:
Richard H. Trais, Esq.                   Micheal L. Harper, Asst. Chief Counsel
2523 West Lawrence Avenue                Immigration and Customs Enforcement, DHS
Chicago, Illinois 60625                  55 East Monroe, Suite 1700
                                         Chicago, Illinois 60603

## DECISION OF THE IMMIGRATION JUDGE

## I.    PROCEDURAL HISTORY

    The Respondent is an arriving alien who is a native of Israel from the Occupied Territories
and is Palestinian by nationality.[1]  The Respondent has previously entered the United States and

_____

    [1] The Respondent traveled to the United States on a passport issued by the Palestinian
Authority.  As noted *infra*, the DHS alleges that the Respondent is a citizen the Palestinian

returned to the Palestinian Authority twice. She initially entered the United States as a non-immigrant visitor in July, 2000 and remained until September 24, 2000. She subsequently returned to the United States again as a non-immigrant visitor on July 16, 2001 and remained until January 9, 2003. The Respondent last arrived on May 31, 2003, however her unexpired passport did not contain either an immigrant or non-immigrant visa.[2] The Immigration and Customs Enforcement ("ICE") detained the Respondent after determining that she was not a *bona fide* visitor and had the intention to remain in the United States indefinitely as an immigrant. Pursuant to INA § 235(b)(1)(A)(i), once the DHS determines that an arriving alien is inadmissible to the United States for not possessing valid entry documents, the alien is subject to expedited removal without hearing. The Respondent was offered the opportunity to withdraw her application for admission and depart, however she expressed a fear of returning to the Occupied Territories. Therefore, her case was referred first to an Asylum Officer and then to the Immigration Court.

The Notice to Appear, dated July 14, 2003, was issued in this case and charges the Respondent with removability from the United States pursuant to INA § 212(a)(7)(A)(i)(I). *See* Ex. 1. The ICE attorney also filed a Form I-261, Additional Charges of Inadmissibility/Deportability, dated July 14, 2003, alleging two additional factual allegations. *See* Gr. Ex. 5.[3] The Immigration Court has jurisdiction over the Respondent's asylum application according to 8 C.F.R. § 1208.2(b). However, the Court does not have jurisdiction to consider the Respondent's bond request. *See* 8 C.F.R. §§ 1003.19(h)(2)(i)(B), 1236.1(c)(11).

The Immigration Court held hearings in the Respondent's case on June 27, 2003, July 11, 2003, August 1, 2003, August 8, 2003, September 29, 2003, and finally October 15, 2003. Initially the Respondent appeared without an attorney, therefore the Court granted the Respondent's request for a continuance. The Respondent appeared at the second hearing with her attorney, however her attorney requested a continuance. On August 1, 2003, the Respondent's attorney requested another continuance, which was granted. On August 8, 2003, the Immigration Court entered the pleadings in the case and scheduled the Merits Hearing for September 29, 2003. On September 29, 2003, the ICE attorney and the Respondent agreed to a further continuance until October 15, 2003. During the course of the proceedings, the Respondent was detained. However, by regulation this Court did not have jurisdiction to consider a bond request, *see* 8 C.F.R. §§ 1003.19(h)(2)(i)(B), 1236.1(c)(11), and moreover, the Respondent requested four continuances thereby prolonging the hearing process.

The Respondent admitted two of the three factual allegations contained in the Notice to

---

Authority.

[2] The Respondent had in her possession an expired passport, marked "Cancelled," which contained a non-immigrant visa to the United States. *See* Ex. 8.

[3] Initially, the ICE alleged that the Respondent was a native and citizen of Iraq. *See* Ex. 1. However, the ICE subsequently withdrew this factual allegation and now alleges that the Respondent is a native of Israel and a citizen of the Palestinian Authority. *See* Gr. Ex. 5.

Appear, including Factual Allegation One: that she is not a national or citizen of the United States and Factual Allegation Three: that she was not in possession of a valid immigrant visa at the time of her application for admission. *See* Ex. 1. She denied the initial Factual Allegation Two contained in the NTA alleging that she was a native and citizen of Iraq.[4] *See id.* The Respondent also admitted the substituted and additional factual allegations on the Form I-261, including Factual Allegation Two: that she is a native of Israel and a citizen of the Palestinian Authority and Factual Allegation Four: that she last arrived in the United States at O'Hare airport on May 31, 2003. *See* Gr. Ex. 5.

The Respondent initially denied that she was inadmissible as charged. Specifically, the Respondent argued that she had a multiple entry visa to the United States at the time of her attempted entry. *See* Gr. Ex. 8. However, her counsel at the August 8, 2003 hearing conceded that the Respondent was an intending immigrant not in possession of a valid immigrant visa and was subject to removal. Based on these admissions, she has necessarily failed to meet her burden of establishing that she is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212. *See* INA § 240(c)(2). Therefore, the Respondent is removable as charged. Because the Respondent declined to designate a country of removal, the Court designated the Palestinian Authority, or its equivalent, in accordance with INA § 241(b)(1)(C).

The Respondent is requesting relief in the form of asylum under INA § 208(a), withholding of removal under INA § 241(b)(3), and withholding of removal under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention").[5] *See* Gr. Ex. 6; 8 C.F.R. § 1208.16. In her asylum application, she indicates that she fears returning to the Palestinian Authority on account of her nationality, religion, political opinion, and membership in a particular social group.

## II.    THE EVIDENCE PRESENTED

### A.    The Documentary Evidence

A number of documents relevant to the merits were entered into the record as follows: *Ex. 1*: Notice to Appear; *Gr. Ex. 5*: Additional Charges of Inadmissibility/Deportability, Withdrawal of Application for Admission/Consular Notification dated June 2, 2003; *Gr. Ex. 6*: Application for Asylum and for Withholding of Removal and Statement of the Respondent; *Ex. 8*: the Respondent's Palestinian Authority Passports; *Ex. 9*: Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act; *Ex. 10*: Application for Asylum and for Withholding of Removal and

---

[4] The DHS attorney subsequently withdrew this allegation and filed a substituted allegation stating that the Respondent is a native of Israel and a citizen of the Palestinian Authority. *See* Gr. Ex. 5.

[5] The Respondent included her husband, Mr. Abdel-Raouf Daqqa, in her application for asylum. *See* Gr. Ex. 6. However, her husband has filed his own asylum application and will not be included in the Respondent's application.

Statement of the Respondent dated June 2, 2003; *Ex. 11:* the Respondent's Form I-94 Departure Record; *Ex. 13:* Order for Arabic Interpreter for September 29, 2003 Hearing; *Gr. Ex. 14:* Supporting Documentary Evidence, consisting of tabs 1-25; *Ex. 15:* U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Israel and the Occupied Territories 2002* (May 31, 2003); *Gr. Ex. 17:* Additional Supporting Documents, consisting of tabs 1-6[6]; *Ex. 18:* Maps of West Bank (disputed), Israel, and the Gaza Strip; *Ex. 19:* Ibrahim Barzak, *Gaza Strip Blast Kills Three Americans,* Middle East Associate Press, Yahoo! News.

      B.      <u>The Testimonial Evidence</u>

            1.      Testimony of the Respondent

The Respondent testified that she was born on December 11, 1974 in Nabulus, West Bank, and resided in Attil, West Bank. She stated that she attended two universities. The first University that she attended was in Ram Allah but it had to be closed due to political violence. She next attended the Al Najah University in Nabulus from 1994 until 1998 and graduated with a degree in Economics.

According to the Respondent, she did not join any political organizations while she was a student. She stated that members of the militant Islamic Resistance Movement ("HAMAS") attempted to pressure her to join but she resisted and informed them that she hated them and that they should stay away from her.

The Respondent stated that she is a moderate Moslem. She stated that she has never been to a Mosque, but she prays at home. She further stated that she occasionally wears a head veil. According to the Respondent, when she initially attended the University, she did not wear a head veil, but she was subjected to "people's words and attitudes" and thereafter wore the veil. She stated that in the year 2000, she received a threat written on the wall of her house and signed by HAMAS warning her to wear the Islamic head veil.

The Respondent testified that in February 2003, the Israeli government took her husband's and his family's land[7] to build the fence that separates the West Bank from Israel. According to the Respondent, she was frustrated but she did not protest against the land confiscation because she did not know what to say. The Respondent stated that the United Nations is currently providing food and medicine to Palestinians who lost their land to the Israeli government.

She stated that on March 10, 2003 at 9:30 p.m., she was in her house in Attil with her

---

    [6] Gr. Ex. 17, tab 6 consists of an affidavit from the Mayor of the Palestinian Authority Attil Municipality. The ICE attorney objected to its admission to the Record contending that there is no opportunity to cross-examine the Mayor. The Court admitted the affidavit but will give it limited weight.

    [7] The Respondent stated that her family used this land for agriculture purposes.

children when someone pounded on her door and rang the doorbell. She stated that she opened the door and four men dressed in black who identified themselves as HAMAS entered her house and threatened her. She stated that they were trying to force her to attend the demonstration regarding the fence that Israel was constructing. According to the respondent, the men asked where her husband was and told the Respondent to tell him to return from the United States. She stated that they remained in her house approximately fifteen minutes.

The Respondent stated that she was next harassed at her house on April 14, 2003 at approximately 10:30 p.m. She testified that men wearing black came to her house and accused her of not participating in the demonstration, specifically of not sitting on her land where the Israelis were constructing the fence. She stated that the men told her that if she did not attend the next demonstration, they would kill her. The respondent stated that she told the men that she would attend the next demonstration, but she fled the Palestinian Authority prior to the date of the next demonstration.

On May 31, 2003, the Respondent arrived in the United States. She testified that if she returns to the West Bank, she fears that the HAMAS will kill her because she defied them and she left. She also testified that she fears the "whole situation from both sides." In addition, she testified that her son suffers from asthma and has enlarged glands. She further testified that she would not have electricity or machines to treat her son's medical conditions in the West Bank.

When questioned regarding her previous entries to the United States, the Respondent testified that she first entered the United States in July, 2000 and returned to the West Bank on September 24, 2000. While she was in the United States, she gave birth to her son on July 24, 2000 and the DHS attorney noted that the Respondent accepted financial public assistance. When questioned why she did not remain in the United States, the Respondent stated that she only remained for three months because she only had three months vacation from her work. She further stated that she did not have the intention of remaining in the United States because she had not been personally harassed in the West Bank.

The respondent next entered the United States on July 16, 2001 and she remained for one year and five months before returning to the West Bank on January 9, 2003. When questioned whether she applied for asylum when she was in the United States from July, 2000 until September 24, 2000 and from July 16, 2001 until January 9, 2003, the Respondent stated that she did not have the intention to stay in the United States and she wanted to return to her home and her work.

When questioned regarding her family, she stated that she has four brothers and two sisters. One sister and one brother are naturalized citizens residing in the United States; one sister resides in Great Britain; and the remaining three brothers reside in the West Bank. She stated that her U.S. citizen brother offered to file a family-based petition on her behalf, but she refused because she wanted to live near her family in Attil. She further stated that her parents currently live in Attil, West Bank. She testified that her husband's siblings live in Spain, Jordan, and the West Bank.

2.      Testimony of Mr. Abdel Raouf Daqqa (the Respondent's Husband)

Mr. Abdel Raouf Daqqa, the Respondent's husband, testified on his wife's behalf. *See* Gr. Ex. 14, tab 8 (Statement). He stated that his wife came to the United States on May 31, 2003 so that she would be safe. He testified that in approximately March, 2003 the Israeli government took land, approximately 120 hectares, that his family had owned for one hundred years. He explained that this land is currently located on the west side of the fence on the Israeli side. He further explained that the areas of Attil and Qalqilyah were most affected by the Israeli land occupation and to a lesser extent, Janin. He testified that he did not request compensation for the land taken by Israel and that no member of his family protested the Israeli actions by participating in demonstrations because they were afraid. He testified that the Israeli government shot at people participating in the demonstrations.

Mr. Daqqa testified that he entered the United States for the first time in May, 2000 and he has not returned to the West Bank. He testified that he came to the United States because he previously worked at a hotel in Israel and he slept there throughout the week. He stated that many different factions, including radical extremists, questioned why he would sleep in Israel and pressured him not to sleep there. According to Mr. Daqqa, this pressure led him to leave the West Bank and come to the United States.

Mr. Daqqa testified that he has five brothers. One of his brothers died in Kuwait in 1988 in an accident. One of his brothers resides in Jordan; another brother is a citizen of Spain; and his remaining two brothers reside in the West Bank. He stated that his two brothers in the West Bank previously lived in the house that was on the land taken by the Israeli government, but now they move around the suburbs of Attil. When questioned if his brothers or any of his family work on the land now, he stated that they do not.

According to Mr. Daqqa, his wife cannot return to the West Bank because she will not be safe. He stated that the village knows that she refused to participate in the demonstrations against the Israeli land occupation and that she fled to the United States to request asylum. When questioned why his wife did not request asylum on her previous visits to the United States, he stated that his wife's asylum claim is based on the recent taking of the land and the threats by the HAMAS.

On cross examination, Mr. Daqqa testified that he was not employed when his son was born in the United States on July 24, 2000, but his wife's sister paid for the expenses. The ICE attorney noted that the Respondent testified that she applied for financial assistance from the State of Maryland. Mr. Daqqa explained that his wife's sister applied for her for Medicare and she was approved.

3.      Testimony of Mr. Jehad Kafri (the Respondent's brother)

Mr. Jehad Kafri testified that he is the Respondent's brother and that he entered the United States in 1989. He stated that he met his wife in the United States and he became a naturalized citizen in 1996 or 1997. He stated that he traveled to the West Bank in 1995 for five weeks and in

-6-

1998 for ten days. According to Mr. Kafri, when he visited the West Bank in 1998, the Respondent and her husband were living in Attil and working on the farm. He stated that the Respondent's husband was also was working at a hotel in Israel.

When asked why his sister came to the United States in May, 2003, he stated that his sister was scared for her life. He described one incident in which he called his sister while she was still living in the West Bank and she was crying and stated that there was a tank driving around the house. He also stated that she mentioned something about people coming to the house and forcing her to participate in a demonstration. He explained that he told his sister that she should come to the United States. He stated that many people die every day in the West Bank and there is no order, especially in the border town of Attil. He stated that this is a concern for everybody.

When questioned if his father owned any land, he stated that they previously owned land, but they lost land in 1948 when Israel became a state. On cross examination, the respondent stated that he was not in the West Bank when the Israeli government took the Respondent's husband's land.

## III. ANALYSIS

In reaching a decision in this case, this Court is not unmindful of the general danger and violence affecting the residents of the Occupied Territories. The facts of this case present a sympathy situation because the Respondent is seeking to rejoin her husband and family in the United States, albeit some of whom are here unlawfully. However, after careful consideration of the record in its entirety, I find that the Respondent's facts do not qualify her for asylum within the meaning of 208(a) of the Act. As discussed below, the Respondent failed to establish that she suffered past persecution or has a well-founded fear of persecution on account of one of the five protected grounds under the Act.

### A. CREDIBILITY

The court attaches significant weight to the credibility of an asylum applicant. *See In re O-D-*, 21 I&N Dec. 1079 (BIA 1998). An applicant's consistent and detailed testimony can be sufficient to meet the burden of establishing persecution. *In re Kasinga*, 21 I&N Dec. 357 (BIA 1996). However, "an applicant does not meet his or her burden of proof by general and meager testimony," *In re Y-B-*, 21 I&N Dec. 1136 (BIA 1998), and the unavailability of supporting documentary evidence should be adequately explained. *See Matter of S-M-J-*, 21 I&N Dec. 722, 730 (BIA 1997). Moreover, the immigration judge may make an adverse credibility finding and deny the alien's application for asylum and withholding of deportation when (1) there are discrepancies present in the respondent's documentary and testimonial evidence; (2) those inconsistencies and omissions provide good reason to conclude that the respondent's testimony is incredible; and (3) the respondent fails to provide a convincing explanation for those discrepancies. *See Matter of S-A-*, 22 I&N Dec. 1328, 1331 (BIA 2000) (citing *Matter of A-S-*, 21 I&N Dec. 1106, 1109 (BIA 1998)).

In assessing the credibility of the respondent, this Court has taken into account the

-7-

rationality and the general consistency of her claim. In reviewing the record, there are no significant discrepancies between the testimony and the documentary evidence in support of her request for relief. In addition, the Respondent's husband and brother testified consistently with regard to her claim. Thus, the Court finds the respondent credible. However, this finding alone is not dispositive as to whether asylum should be granted. Rather, the specific content of the testimony, and any other relevant evidence in the record is also considered. *In re E-P-*, 21 I&N Dec. 860, 862 (BIA 1997).

## B.    ASYLUM

Under section 208(a) of the Act, the Attorney General may grant asylum to an alien who is physically present in the United States if the alien meets the statutory definition of a refugee. A refugee is defined as an individual who is unable or unwilling to return to his or her native country "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A). In order to establish eligibility for asylum, the respondent carries the burden of establishing past persecution or a well-founded fear of future persecution. *Id.*; *Matter of Chen*, 20 I&N Dec. 16, 17 (BIA 1989); *Matter of Acosta*, 19 I&N Dec. 211, 215 (BIA 1985).

The Respondent contends that she is eligible for asylum because she suffered past persecution and has a well-founded fear of future persecution from the Israeli government and also from members of the HAMAS. During the hearing, the Respondent's attorney argued that she suffered persecution on account of an imputed political opinion. In the Respondent's asylum application, she indicated that she was seeking asylum based on religion, nationality, political opinion, and membership in a particular social group. *See* Gr. Ex. 6. The ICE attorney is opposed to the grant of asylum contending that the Respondent does not fall within the statutory definition of a refugee.

### 1.    Asylum Based on a Claim of Past Persecution

An alien may be eligible for asylum based on past persecution. A showing of past persecution creates a presumption that an applicant has a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1); *Marquez v. INS*, 105 F.3d 374, 379 (7th Cir. 1997). A respondent for asylum must establish that the past persecution or fear of future persecution is "on account of" one of the five enumerated grounds. It is not sufficient to have a well-founded fear of harm; it must be on account of race, religion, nationality, membership in a particular social group, or political opinion. *See, e.g.*, *Matter of Maldonado-Cruz*, 19 I&N Dec. 509, 512 (BIA 1988). A respondent is "fleeing general conditions of violence and upheaval in their native country would not qualify for asylum." *Id.* at 512.

#### a.    Religion

In her asylum application, the Respondent stated that she was seeking asylum based on her religion. *See* Gr. Ex. 6. She testified that she is a moderate Moslem and that she prays at home. She testified that she has never attended a Mosque. She stated that while she was a student from

1993 until 1998, she was pressured to wear the Islamic head veil and that she succumbed to the pressure. She further testified that in 2000, she received a threat written on the wall of her house and signed by HAMAS warning her to wear the Islamic veil. The Respondent did not report any further mistreatment relating to religion between 2000 and 2003.

The Respondent failed to establish that this mistreatment arises to the level of persecution. "Types of actions that might cross the line from harassment to persecution include: 'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Begzatowski v. INS*, 278 F.3d 665, 669 (7th Cir. 2002) (quoting *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir. 1995)). In *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996), the Seventh Circuit held that an Iranian woman did not suffer past persecution when she was required to live according to Iran's social mores. *See also Fisher v. INS*, 79 F.3d 955, 961-62 (9th Cir. 1996). Similarly, the Respondent did not suffer past persecution when she was pressured to wear the Islamic veil.

        b.    Nationality

In her asylum application, the Respondent also stated that she was seeking asylum based on her Palestinian nationality. The Respondent testified that in January, 2003, the Israeli government took her husband's family's land in order to construct security fences. Her husband testified that the Israeli government confiscated land surrounding Attil (the Respondent's residence) and Qalqilyah, and to a lesser extent Janin. Other than the testimonial evidence, the Respondent submitted an unauthenticated letter allegedly from the Mayor of the Palestinian Authority Attil Municipality stating that the Israeli government confiscated the Respondent's husband's land for the building of a security fence. *See* Gr. Ex. 14, tab 19. The Respondent also submitted an affidavit from Mr. Raed Mahmond, an alleged acquaintance, stating that he has personal knowledge that the Respondent's land was seized by the Israeli government. *See* Gr. Ex. 14, tab 18. Neither affiant testified before the Court, therefore their affidavits will be given minimal weight.

The Respondent submitted documentary evidence, including the Amnesty International *Israel/Occupied Territories, Surviving Under Siege*, which indicates that on June 14, 2002, the Israeli government announced that it would construct a wall/fence (the "separation barrier") along the perimeter of the West Bank and north and south of Jerusalem. *See* Gr. Ex. 14, tab 25, at 30. "The stated aim of the project is to prevent Palestinians crossing clandestinely from the West Bank into Israel, so as to prevent suicide bombings and other attacks. However, the barrier is not being constructed on the Green Line separating Israel from the West Bank. Most of it is being constructed on Palestinian land inside the West Bank." *Id.* The article further reports that the security barrier is almost 400 km in length and some 11.5 square kilometers of Palestinian land has been destroyed. Thus, considering the documentary and testimonial evidence, the Court finds that the Respondent has sufficiently established that her husband's land was confiscated.

However, the Respondent failed to establish that the confiscation of land qualifies her for asylum. Specifically, the Respondent failed to establish that the Israeli government's actions were on account of nationality. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); *In re C-A-L*, 21

I&N Dec. 754, 756-57 (BIA 1997) (The respondent must present some evidence, direct or circumstantial, linking the past persecution or fear of future harm to one of the five protected grounds). The Respondent submitted evidence indicating the opposite. Specifically, the Amnesty International article indicates that the Israeli stated aim for constructing the barrier was to prevent suicide bombings and other attacks. *See* Gr. Ex. 14, tab 25, at 30. Moreover, the article indicates that the Israeli government constructed the security barrier along the perimeter of the West Bank. Inasmuch as the Respondent presented evidence that the Israeli government confiscated her husband's land on account of security grounds and not on account of one of the five protected grounds, she failed to establish that she was persecuted because of her nationality.

In addition, the Seventh Circuit has held that "general, oppressive conditions that affect the entire population of a country do not provide a basis for asylum." *Petrovic v. INS*, 198 F.3d 1034, 1037 (7th Cir. 2000) (upholding finding that petitioner did not have a well-founded fear of persecution because his fears of persecution were ones held by all ethnic Serbians in Croatia). The Seventh Circuit also stated in *Mitev v. INS*, 67 F.3d 1325, 1331 (7th Cir. 1995), that it "recognized the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." Moreover, in *Matter of Maldonado-Cruz*, 19 I&N Dec. 509, 512 (BIA 1988), the Board held that a respondent who is fleeing from general conditions of violence and upheaval in their native country does not qualify for asylum. In this case, the security barrier affects all Palestinians living in the West Bank, not only those living on the borders and therefore all Palestinians are subjected to the resulting conditions stemming from the barrier. Although the Respondent believes that this is unfair and unjust, the Court finds that it does not provide a basis for asylum.

      c.      Political Opinion

The Respondent also testified that she is seeking asylum based on an imputed political opinion. Specifically, she testified that the HAMAS came to her house twice and on April 14, 2003, they threatened to kill her if she did not participate in a demonstration against the Israeli land occupation. She stated that she subsequently fled the West Bank and attempted to enter the United States on May 31, 2003.

One threat by the HAMAS does not rise to the level of persecution. In this case, there is no indication that the HAMAS intended to carry out their threat. Indeed, the Respondent's family members, whose land was confiscated by the Israeli government, did not participate in demonstrations and there is no indication that the HAMAS targeted them. In *Boykov v. INS*, the Seventh Circuit stated that "threats of a most immediate and menacing nature might, in some circumstances, constitute past persecution." 109 F.3d 413, 416 (7th Cir. 1997). "In the vast majority of cases, however, mere threats will not, in and of themselves compel a finding of past persecution. Rather, unfulfilled threats will fall within that category of past experience more properly viewed as indicative of the danger of future persecution." *Id.* The Respondent has not established that the one unfulfilled threat by HAMAS was of a "most immediate and menacing nature," therefore she failed to establish that she suffered past persecution by the HAMAS.

d.    Membership in a Particular Social Group

In her asylum application, the Respondent stated that she was seeking asylum based on her membership in a particular social group. However, she failed to identify a particular social group. "To qualify for asylum based on group membership, an alien must: 1) identify a particular social group; 2) establish that she is a member of that group; and, 3) establish that her well-founded fear of persecution is based on her membership in that group." *Sharif v. INS*, 87 F.3d at 936. Inasmuch as the Respondent failed to identify a particular social group, she has failed to establish that she suffered past persecution on account of membership in a particular social group.

Based on the foregoing reasons, the Court finds that the Respondent failed to establish that she suffered past persecution on account of one of the five protected grounds.

**2.    Asylum Based on a Claim of a Well-Founded Fear of Persecution**

To establish that a fear is well-founded, the respondent must show that his or her fear is both subjectively genuine and objectively reasonable. *Mitev v. INS*, 67 F.3d at 1331. "Merely alleging a fear of future persecution is not enough." *Sharif v. INS*, 87 F.3d at 935. "In order to demonstrate a well-founded fear, a petitioner must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." *Zulbeari v. INS*, 963 F.2d 999, 1000 (7th Cir. 1992).

The Respondent testified that she fears returning to the West Bank for three reasons. First, she testified that she fears that the HAMAS will kill her for failing to participate in the demonstrations against the Israeli government. Second, she testified that she fears the "whole situation from both sides." Third, she testified that she would not have electricity or medicine to treat her son's asthma and enlarged glands. The Court finds that the Respondent failed to establish that she has a well-founded fear of persecution.

First, the Respondent contends that the HAMAS will kill her for failing to participate in the demonstrations against the Israeli government. The Respondent's fear may be subjectively genuine, however it is not objectively reasonable. Her husband testified that his two brothers, who used to live on the land taken by the Israeli government, currently live in the West Bank. *See Matter of A-E-M-*, 21 I&N Dec. 1157, 1160 (BIA 1998) (holding that the reasonableness of the respondent's fear of future persecution is undermined when the respondent's family remains unharmed in their native country). The Respondent's husband further testified that no member of his family participated in the demonstrations against the Israeli government. Because the HAMAS has not targeted any of the Respondent's husband's family for failing to participate in the demonstrations, it is unreasonable for the Respondent to claim that they will kill her if she returns. Moreover, the Respondent's parents and three brothers remain in the West Bank without being harmed by the HAMAS. *See Matter of A-E-M-, supra.* As such, she does not have an objectively reasonable fear of persecution on account of an imputed political opinion by the HAMAS.

Second, the Respondent's statement that she "fears the situation from both sides" is certainly subjectively genuine and objectively reasonable, however as stated above, "general,

oppressive conditions that affect the entire population of a country do not provide a basis for asylum" *Petrovic v. INS*, 198 F.3d 1034, 1037 (7th Cir. 2000); *see also Matter of Sanchez & Escobar*, 19 I&N Dec. 286 (BIA 1985) (holding that widespread savage violence affecting all Salvadorans as a result of civil strife and anarchy is not persecution). Specifically, the Respondent does not have a well-founded fear of persecution on account of one of the five protected grounds based on the violence and upheaval in the West Bank. *See Matter of Maldonado-Cruz*, 19 I&N Dec. at 512. The Court would be compelled to grant all Palestinian asylum cases based upon the general danger and violence affecting everyone.

Third, the possibility that the Respondent's son may not have access to medical care in the West Bank for treatment of his asthma and enlarged glands does not establish that the Respondent has a well-founded fear of persecution. The Respondent's son is a U.S. citizen and therefore is not being removed to the Palestinian Authority. Although the Court recognizes that the Respondent may choose to take her son with her, there is no indication that the lack of medical care in the West Bank is on account of one of the five protected grounds. Rather, this is an unfortunate consequence of the ongoing civil strife.

Inasmuch as the Respondent failed to establish past persecution or a well-founded fear of future persecution, she has not established that she is a refugee under the Act and the Court will deny her request for asylum.

## C. WITHHOLDING OF REMOVAL

To be eligible for withholding of removal pursuant to section 241(b)(3) of the Act, the respondent must demonstrate a clear probability of persecution in the country designated for removal on account of race, religion, nationality, membership in a particular social group, or political opinion. *See INS v. Stevic*, 467 U.S. 407 (1984). The respondent must establish that it is more likely than not that he or she would be subject to persecution for one or more of the enumerated grounds. *Id.* The burden of proof required to establish eligibility for asylum is lower than that required for withholding of removal. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Sharif v. INS*, 87 F.3d at 935.

Because the Respondent has failed to meet the well-founded fear standard required for asylum, she has necessarily failed to meet the more stringent requirement of a clear probability of persecution required for withholding of removal. *See Marquez v. INS*, 105 F.3d 374, 382 (7th Cir. 1997) (stating that "anyone who fails the laxer asylum test [is barred] from passing the more stringent deportation-withholding test."). Accordingly, the respondent's application for withholding of removal will also be denied.

## D. TORTURE CONVENTION RELIEF

For asylum applications filed on or after April 1, 1997, an applicant shall also be considered for eligibility for withholding of removal under the Torture Convention if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of removal. *See* 8 C.F.R. § 1208.13(c)(1).

-12-

An applicant for withholding of removal under the Torture Convention bears the burden of proving that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). As with asylum, this burden can be established by testimony without corroboration if the testimony is credible. *See id.*; *see also Matter of Y-B-*, 21 I&N Dec. 1136 (BIA 1998). In assessing whether the applicant has satisfied the burden of proof, the court must consider all evidence relevant to the possibility of future torture, including: "evidence of past torture inflicted upon the applicant; evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and other relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

"Torture" is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). The severe pain or suffering must be inflicted on the applicant for one of four purposes, specifically: (1) to obtain information or a confession; (2) to punish for an act he or she committed or is suspected of having committed; (3) to intimidate or coerce; or (4) for any reason based on discrimination of any kind. *See id.* In addition, in order to constitute "torture," the "act must be directed against a person in the offender's custody or physical control." 8 C.F.R. § 1208.18(a)(6). Further, the pain or suffering must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Acquiescence" requires that the public official have prior awareness of the activity and "thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). Torture is an "extreme form of cruel and inhuman treatment" but does not include pain or suffering arising from lawful sanctions. 8 C.F.R. § 1208.18(a)(2), (3). Lawful sanctions, however, do not include sanctions which defeat the objectives and purpose of the Torture Convention. 8 C.F.R. § 1208.18(a)(3).

The Respondent has failed to establish that it is more than likely that she will be tortured if removed to the Palestinian Authority. Specifically, she failed to present evidence of any past torture inflicted her or her family. Currently, the Respondent's parents and three brothers and her husband's two brothers reside in the West Bank without being tortured by the authorities. As such, the Respondent's request for withholding of removal under the Torture Convention must be denied.

Accordingly, the following order shall be entered.

## ORDER OF THE IMMIGRATION JUDGE

IT IS HEREBY ORDERED that the Respondent's request for asylum be DENIED.

IT IS FURTHER ORDERED that the Respondent's request for withholding of removal under 241(b)(3) be DENIED.

-13-

IT IS FURTHER ORDERED that the Respondent's request for withholding of removal under the Torture Convention be DENIED.

IT IS FURTHER ORDERED that the respondent shall be removed to the Palestinian Authority on the charge contained in the Notice to Appear.

O. JOHN BRAHOS
IMMIGRATION JUDGE

EXHIBIT 11

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
CHICAGO, ILLINOIS

*Feb 7,*

*Feb 4,*

RICHARD H. TRAIS
2523 W. LAWRENCE
CHICAGO      IL 60625

*— delivered —*

IN THE MATTER OF          FILE A 95-925-347      DATE: Jan 7, 2004
DAQA, LINA*

___ UNABLE TO FORWARD - NO ADDRESS PROVIDED

_X_ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE.  THIS DECISION
IS FINAL UNLESS AN APPEAL IS FILED WITH THE BOARD OF IMMIGRATION APPEALS
WITHIN 30 CALENDAR DAYS OF THE DATE OF THE MAILING OF THIS WRITTEN DECISION.
SEE THE ENCLOSED FORMS AND INSTRUCTIONS FOR PROPERLY PREPARING YOUR APPEAL.
YOUR NOTICE OF APPEAL, ATTACHED DOCUMENTS, AND FEE OR FEE WAIVER REQUEST
MUST BE MAILED TO:      BOARD OF IMMIGRATION APPEALS
                        OFFICE OF THE CLERK
                        P.O. BOX 8530
                        FALLS CHURCH, VA  22041

___ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE AS THE RESULT
OF YOUR FAILURE TO APPEAR AT YOUR SCHEDULED DEPORTATION OR REMOVAL HEARING.
THIS DECISION IS FINAL UNLESS A MOTION TO REOPEN IS FILED IN ACCORDANCE
WITH SECTION 242B(c)(3) OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C.
SECTION 1252B(c)(3) IN DEPORTATION PROCEEDINGS OR SECTION 240(c)(6),
8 U.S.C. SECTION 1229a(c)(6) IN REMOVAL PROCEEDINGS.  IF YOU FILE A MOTION
TO REOPEN, YOUR MOTION MUST BE FILED WITH THIS COURT:

                        IMMIGRATION COURT
                        55 EAST MONROE ST., SUITE 1900
                        CHICAGO, IL  60603

___ OTHER: _____

                        COURT CLERK
                        IMMIGRATION COURT                    FF

    CC: JOHN GOUNTANIS
        55 EAST MONROE ST. SUITE 1700
        CHICAGO, IL,  60603
VLG

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
CHICAGO, ILLINOIS

File: A95-925-347                                        Date: January 7, 2004

In the Matter of                          )
                                          )
         Lina DAQA,                       )       IN REMOVAL PROCEEDINGS
                                          )
Respondent.                               )

Charge:      INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) – Immigrant who at time
             of application for admission was not in possession of a valid unexpired immigrant
             visa, reentry permit, border crossing card, or other valid entry document.

Applications:  Motion to Reopen.
               Motion to Reconsider.

ON BEHALF OF THE RESPONDENT              ON BEHALF OF THE DHS:
Richard H. Trais, Esq.                   Seth B. Fitter, Asst. Chief Counsel
2523 West Lawrence Avenue                John H. Gountanis, Ass't Chief Counsel
Chicago, Illinois 60625                  55 East Monroe, Suite 1700
                                         Chicago, Illinois 60603

## DECISION OF THE IMMIGRATION JUDGE

        The Respondent, a native of Israel from the Occupied Territories and a national of
Palestine, arrived in the United States on May 31, 2003 without a valid entry document. She
requested asylum and after a thorough examination of her request for asylum, on November 7,
2003, the Immigration Court denied her requests for asylum, withholding of removal under section
241(b)(3) of the Act, and relief under the Torture Convention. The Immigration Court also
ordered her removed to the Palestinian Authority or its equivalent. There is no evidence that the
Respondent appealed this decision.

        On November 28, 2003, the Respondent filed a Motion to Reconsider and on December 8,
2003, a Motion to Reopen. The Department of Homeland Security ("DHS") is opposed to both
motions.

### Motion to Reconsider

        A motion to reconsider is proper where the original decision was defective in some regard
and the court is asked to review its original decision because of an additional legal argument, a

-1-

A95-925-347

change in the law, or because the judge overlooked an aspect or argument in the law of the case. *See Matter of Cerna*, 20 I&N Dec. 399 (BIA 1991). A motion to reconsider must state specific errors of fact or law in the prior decision of the Immigration Judge and must be supported by pertinent authority. 8 C.F.R. § 1003.23(b)(2). In addition, the regulations require that a motion to reconsider be filed within 30 days of the final administrative order or on or before July 31, 1996, whichever is later. INA § 240(c)(5); 8 C.F.R. § 1003.23(b)(1).

The Immigration Court issued a decision denying relief to the Respondent on November 7, 2003. The Respondent timely filed a Motion to Reconsider on November 28, 2003. As a preliminary matter, the DHS attorney contends that the Motion lacks any evidence that the proper fee has been paid, therefore the Court should deny the Motion. However, according to the regulations, no fee is required for a motion to reopen or reconsider a decision on an application for relief for which no fee is chargeable. *See* 8 C.F.R. § 1103.7 The Motion to Reconsider relates to the Respondent's request for asylum, withholding of removal, and relief under the Torture Convention, for which no fee is chargeable. As such, the Respondent properly filed her Motion to Reconsider without a filing fee.

Although the Motion to Reconsider was properly filed, the Court finds that the DHS attorney's contention that the Respondent's motion is without merit because she failed to specify any errors of fact or law in the Court's prior decision, to be persuasive. The Respondent is advancing the same arguments that she advanced during her removal hearing. She is contending that she suffered past persecution on account of her nationality when the Israeli government confiscated her land without compensation and that she suffered past persecution on account of an imputed political opinion when members of the militant Islamic Resistance Movement ("HAMAS") threatened her and damaged her property. The Respondent further contends that she has a well-founded fear of persecution from both the Israeli government and the HAMAS. The Court has already carefully considered both arguments. The Court is mindful that confiscation of property may rise to the level of persecution, however the Respondent failed to establish that the Israeli government was motivated to confiscate her property *on account of* one of the five protected grounds. The Court is also mindful that threats from the HAMAS may rise to the level of persecution, but there is no indication in this case that the HAMAS intended to carry out their threat against the Respondent. The Court carefully considered these arguments before reaching a decision in the Respondent's request for asylum. The Respondent has not identified any factual or legal error in the Court's decision, therefore her Motion to Reconsider will be denied.

<u>Motion to Reopen</u>

In general, a motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal. *See* INA § 240(c)(6)(C)(i); 8 C.F.R. § 1003.23(b)(1). All motions to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA § 240(c)(6)(B); 8 C.F.R. § 1003.23(b)(3). Moreover, such a motion will not be granted by this Court unless it is "satisfied that evidence sought to be offered is material and was not available

A95-925-347

and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.23 (b)(3). In *In re L-O-G-*, 21 I&N Dec. 413 (BIA 1996), the Board of Immigration Appeals held that "reopening may be had where the new facts alleged, together with the facts already of record, indicate a reasonable likelihood of success on the merits, so as to make it worthwhile to develop the issues at a hearing."

In the instant case, the Respondent contends that her case should be reopened because the United States and the International Community have denounced the Israeli confiscation of property and have questioned the motives of the Israeli confiscation of property. In support of her motion, she submitted the following exhibits: Asylum Division, Office of International Affairs, *Legal Opinion: Palestinian Asylum Applicants*, Oct. 27, 1995; Amnesty International, *Israel/OT: Israel Must Immediately Stop the Construction of Wall*, Nov. 7, 2003; *US Pressure Won't Stop Fence, Says Israel*, Sept. 24, 2003; and Sridhar Krishnaswami, *LOC Fence Not 'Bad' Like West Bank's: U.S.*, Aug. 1, 2003. At the onset, the Court notes that all articles, except the Amnesty International article, were published prior to the Respondent's removal hearing held on October 15, 2003. As such, these articles were available to the Respondent and she could have presented them at the former hearing. The only article that post-dates the October 15, 2003 removal hearing is a three-page release from Amnesty International condemning Israel for constructing the fence/wall in the Occupied West Bank. However, the record of the removal proceedings already contains a comprehensive Amnesty International article discussing the "Separation Barrier/Fence/Wall" and the resulting serious economic and social consequences. *See* Gr. Ex. 14, tab 25. The Court carefully considered the Amnesty International article at Gr. Ex. 14, tab 25 in determining that the Respondent had not established that the Israeli government constructed the fence on her land *on account of* her nationality. The new three-page Amnesty International article would not change this Court's analysis and therefore it is not material. Inasmuch as the Respondent failed to submit material evidence that was not available and could not have been presented at the former hearing, her Motion to Reopen will be denied.

There is an equally strong public interest in bringing litigation to a close promptly as there is in giving non-citizens a fair hearing. *See, e.g., INS v. Abudu*, 485 U.S. 94 107 (1988).

Accordingly, the following order will be entered:

IT IS HEREBY ORDERED that the Respondent's Motion to Reopen be DENIED.

IT IS FURTHER ORDERED that the Respondent's Motion to Reconsider be DENIED.

O. JOHN BRAHOS
IMMIGRATION JUDGE

-3-

EXHIBIT 12

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

**Notice of Appeal from a Decision of an Immigration Judge**

**1.** List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

LINA DAQA    A95 92 5347

*(Left margin, vertical text)* Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order.

**For Official Use Only**

⚠ **WARNING:** Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1.

**2.** I am the ☒ Respondent/Applicant ☐ INS *(Mark only one box.)*

**3.** I am ☒ DETAINED ☐ NOT DETAINED *(Mark only one box.)*

**4.** My last hearing was at ___1 - 7 - 04   Chicago IL___ *(Location, City, State)*

**5.** **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☒ I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _1 - 7 - 04_

☐ I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated _____

☐ I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _1 - 7 - 04_ .

*(Please attach a copy of the Immigration Judge's decision you are appealing.)*

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

6. State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

95 925 347

See issues presented attached.

*(Attach additional sheets if necessary)*

**!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals? ☒ Yes ☐ No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☒ Yes ☐ No

**!** **WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. **SIGN HERE →** X _____   1-28-04

Signature of Person Appealing
*(or attorney or representative)*                                                      Date

Form EOIR-26
Revised Sept. 2002

Page 2 of 3

| 10. | Mailing Address of Respondent(s)/Applicant(s) | 11. | Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|---|---|---|

**10.**

LINA DAGA
(Name)

B.ICE CUSTODY
(Street Address)

Kenosha, Wisconsin
(Apartment or Room Number)

_____
(City, State, Zip Code)

_____
(Telephone Number)

**11.**

RICHARD H. TRAIS
(Name)

2523 W. LAWRENCE
(Street Address)

_____
(Suite or Room Number)

CHICAGO, IL 60625
(City, State, Zip Code)

773-878-8050
(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

## PROOF OF SERVICE
### (You Must Complete This)

I  RICHARD H TRAIS  mailed or delivered a copy of this Notice of Appeal
(Name)

on  1-28-04  to  Dept of Homeland Security
(Date)  Suite 1700  District Counsels Office
(Opposing Party)

at  55 E. MONROE, CHICAGO, IL  60603
(Address of Opposing Party)

[ SIGN HERE → ]   X _____
Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

❏ Read all of the General Instructions
❏ Provided all of the requested information
❏ Completed this form in English
❏ Provided a certified English translation for all non-English attachments

**HAVE YOU?**

❏ Signed the form
❏ Served a copy of this form and all attachments on the opposing party
❏ Completed and signed the Proof of Service
❏ Attached the required fee or Fee Waiver Request

**Page 3 of 3**

Form EOIR-26

ISSUES PRESENTED:

I. That the respondent suffered past persecution on account of her Nationality, membership in the group of land owners whose land was confiscated and her expressed and imputed political opinion; furthermore, that the Israeli action of confiscating her family's land which has been condemned by the international community and the United States, constituted persecution.

II. That the respondent should be granted asylum because of her and her family's subjective and objective fear of the HAMAS terrorist group which has threatened the life of the respondent because the HAMAS terrorist group cannot be controlled by the occupying force, the Israeli government, or by the Palestinian authority.

III. That the respondent should be granted political asylum because she is entitled to a presumption of a well founded fear of future persecution based upon her suffering past persecution; there being no evidence of any change in country conditions since said past persecution.

IV. That the Immigration judge committed an error of law in denying the Respondents Motion to Reconsider because the persecution was established on account of the Respondents Nationality, membership in the group of land owners whose land was confiscated and her expressed and imputed political opinion; furthermore, that the court erred in denying the Motion to Reopen because of a failure to adequately consider evidence that showed the Respondents land was wrongly confiscated for the purpose of further cutting off and isolating the already occupied Palestinian territory, without compensation by the Israeli government on account of her Nationality, membership in the group of land owners whose land was confiscated and her expressed and imputed political opinion.

sacbee.com -- Mideast -- Israel mulls change in fence's path
Case: 1:04-cv-00778 Document #: 1 Filed: 01/30/04 Page 68 of 83 PageID #:68
EXHIBIT 13

## 24-Hour News SPECIAL REPORT: MIDEAST ROAD MAP TO PEACE

SAVE $100 ON HOME OR OFFICE DELIVERY
of The Sacramento Bee in 2004!

▤ RELATED INFO

## Israel mulls change in fence's path

**By MARK LAVIE, Associated Press**
*Last Updated 12:59 p.m. PST Sunday, January 18, 2004*

JERUSALEM (AP) - Israel might change the route of its planned
barrier in the West Bank because of hardships it causes Palestinians,
Israeli Prime Minister Ariel Sharon said Sunday.

Sharon discussed the route with four senior Cabinet ministers in
preparation for a Feb. 23 hearing on the legality of the project at the
International Court of Justice in The Hague, Netherlands.

Israel says it is building the barrier to keep out suicide bombers and
other attackers. Palestinians say Israel's real purpose is to annex
large parts of the West Bank and prevent the creation of a
Palestinian state.



Palestinian workers barred from entering Israel
crowd the barrier in the Palestinian area at the Erez
Crossing, northern Gaza Strip, on Sunday.

**AP Photo/Kevin Frayer**

The route cuts
deep into the
West Bank in
several places
and encircles
Palestinian
towns and
villages.

A U.N. report
found that the
barrier will cause
hardship for
hundreds of
thousands of
Palestinians.
Tens of
thousands, for



instance, would be cut off from their farmlands and vital services.

Sharon told his ministers that while the partially completed barrier has already been successful in preventing
Palestinian attacks, it was "not satisfactory" in humanitarian terms.

"Additional thought is needed to allow for the possibility of changing the route" for humanitarian reasons, a
statement from his office said.

Security officials said Defense Minister Shaul Mofaz, who opposes changing the route, agreed to set up a panel
to handle Palestinian appeals.

villages.

A U.N. report found that the barrier will cause hardship for hundreds of thousands of Palestinians. Tens of thousands, for instance, would be cut off from their farmlands and vital services.

Sharon told his ministers that while the partially completed barrier has already been successful in preventing Palestinian attacks, it was "not satisfactory" in humanitarian terms.

"Additional thought is needed to allow for the possibility of changing the route" for humanitarian reasons, a statement from his office said.

Security officials said Defense Minister Shaul Mofaz, who opposes changing the route, agreed to set up a panel to handle Palestinian appeals.

Israel insists the $1 billion barrier is a temporary security measure, but its trenches, walls and fences look to many like a border.

Sharon has warned that if peace talks remain frozen in the coming months, he would impose a boundary on the Palestinians, indicating that the route of the planned barrier would be the basis of the new line.

Palestinians claim all of the West Bank and Gaza Strip for a state, with its capital in east Jerusalem - all captured by Israel in the 1967 Mideast war.

The first section of the barrier, about 90 miles in the northern sector, has been completed, and Israeli security officials say it has already impeded potential suicide bombers from that part of the West Bank.

Cabinet Minister Tommy Lapid of the centrist Shinui Party has called for changes in the route for political reasons, saying that the current plan is indefensible in the world court and also in a case pending before Israel's Supreme Court.

An Israeli official said the acting attorney general told Sharon that the state prosecutor would have difficulty in defending the current plan before the Israeli court.

Many of the government's dovish critics say Israel should confine its security barrier to the pre-1967 cease-fire line between Israel and the West Bank, but Israel has never recognized that as a border.

Also Sunday, Sharon signed orders for the dismantling of three unauthorized settlement outposts in the West Bank. The stalled U.S.-backed "road map" peace plan requires Israel to dismantle dozens of outposts set up by settlers in recent years.

Meanwhile, thousands of Palestinian workers waited in long lines to cross from Gaza into Israel. The army lifted a closure it clamped on the impoverished strip following a suicide bombing last week that killed four people at the main crossing point into Israel.

swap with the Lebanese guerrilla group Hezbollah, while a few dozen Arab prisoners held in Israel packed their bags ahead of their release. Under the German-mediated swap, expected Thursday, Israel is releasing 436 prisoners in exchange for businessman Elhanan Tannenbaum and three soldiers presumed dead. Most of the prisoners are Palestinians, but more than 30 are from other countries and will be handed over in Germany.

### Israel prepares Arab prisoners for swap with guerrillas

TEL AVIV, Israel (AP) - A Lebanese guerrilla leader about to be freed in a prisoner swap testified Tuesday that Israeli interrogators raped him, sodomized him with a club and kept him naked for weeks in a round-the-clock effort to extract information on a missing Israeli aviator, Butte of Roturator Ariena Sector said interrogators never touched Mustafa Dirani. The prosecutor said Dirani "sang like a bird" and made up allegations of abuse to explain why he gave Israel information.

### Israeli settlers reject dismantling plan

JERUSALEM (AP) - Prime Minister Ariel Sharon's office on Tuesday proposed evacuating seven isolated settlements in the West Bank and Gaza Strip, settler leaders said, in what would be the strongest sign yet that Israel is getting ready to impose its own boundary. Israel has never removed an officially sanctioned settlement, and the proposal raised questions about whether Sharon really intended to carry it out. Sharon denied the proposal was formally made.

### Egyptian, U.S. diplomats try to restart Mideast talks

ROME, Italy (AP) - Egypt's foreign minister met with Palestinian leaders Tuesday to push for a halt to Palestinian attacks against Israelis, a first step toward restarting the peace process under the internationally backed road map peace plan. A U.S. Jewish settler leader said Tuesday that Prime Minister Ariel Sharon wants to dismantle several settlements in the West Bank and Gaza Strip with the consent of residents.

Stringent checks kept people waiting for hours, and many were turned away frustrated and tired after hours of standing in line, witnesses said.

In Nablus, Israeli troops arrested Ahmed Bseisi, the local leader of the Islamic Jihad. Witnesses said soldiers pulled Bseisi and two other men out of a taxi and took them away.

The Sacramento Bee · Get the whole story every day · **SUBSCRIBE NOW!**

**Related Stories**

--------------------

Envoy's outburst shows Israel-Europe rift
*(Published 9:00 a.m. PST Sunday, Jan. 18, 2004)*

---

**Israeli soldiers dig up bodies for prisoner swap**

JERUSALEM (AP) - Israeli soldiers on Monday began digging up 19 bodies of Lebanese militants buried in a small plot in northern Israel, a first step toward a prisoner swap with the Hezbollah guerrilla group that is to take place this week. The exchange could lead to a resolution of the whereabouts of Israeli airman Ron Arad, who has been missing since his plane crashed in southern Lebanon in 1986.

**Palestinian official says Arabs working on peace initiative**

JERUSALEM (AP) - Saudi Arabia has renewed an initiative calling for a comprehensive peace agreement between Israel and the Arab world, the Palestinian foreign minister said Sunday. Nabil Shaath said the proposal would call for Israel to withdraw from the lands captured in the 1967 Mideast War and agree to the establishment of an independent Palestinian state with Jerusalem as its capital in return for peace with the Arab world.

**Sharon says he will make every effort to learn about famous MIA**

JERUSALEM (AP) - Prime Minister Ariel Sharon said Sunday he has been assured that Hezbollah will make every effort in the coming months to help secure information about Israel's most famous MIA. Sharon said the fate of Ron Arad would be addressed in a second stage of negotiations with the Lebanese guerrilla group once a prisoner swap is completed this week. The second phase will also include the release of Palestinian prisoners accused of killing Israelis, a Palestinian source said.

**Hezbollah, Israel set to exchange prisoners**

BEIRUT, Lebanon (AP) - Israel and Hezbollah will exchange prisoners in a two-stage deal in which the militant Lebanese group promises to obtain information about Israeli airman, possibly including one of Israel's longest-held prisoners within three months, the Hezbollah leader said Sunday. The swap begins with an exchange of prisoners and human remains Thursday and Friday, and will proceed to the issue of missing Israeli airman Ron Arad and

*EXHIBIT 14*





## this week's NEWS

**Bridgeview, Hickory Hills, Justice, Willow Springs**



Stopped from Entering U.S.
Moraine Valley Unveils Visions of Galaxy, Stars
Renovation Planned For Palos Schools
Bridgeview Library Will Be Expanded

## Stopped from Entering U.S.

### *Palos Hills Woman Has Been Held in Prison for Four Months*

**By YVETTE PRESBERRY**

*Published October 21, 2003 Southwest News-Herald – Bridgeview, Hickory Hills, Justice Willow Springs Edition*



By YVETTE PRESBERRY

A Palestinian woman from Palos Hills has been held in prison for over fou months for attempting to enter the U.S. after a visit to the Middle East.

Lina Daqa, 28, was reportedly stopped by immigration officers at O'Hare Airport in May when she landed from a trip to her native country Palestin

According to one of her attorneys, Reem Odeh, Daqa had previously livec the U.S. with a visitor's visa.

She had returned to Palestine to see how conditions were near her forme land, and saw that the situation had worsened. Her house was gone, and her relatives were scattered throughout the Middle East.

Daqa tried to return back home to the U.S., but Odeh said that officials from the Bureau of Immigration and Customs Enforcement said that she was not allowed.

"It was in their sole discretion," said Odeh, who stated that this was the only explanation given for Odeh's detainment.

Daqa's attorney said that her client had a valid visa and passport at the time of her arrest, and because of that, she has no idea why the Palos Hi resident was taken into federal custody.

She had a visa that allowed her multiple visits to the U.S., said Odeh.

When Daqa was arrested, she asked for political asylum in the U.S. becat of the war-like conditions in Palestine.

Odeh said that federal officials may have thought she had something to hide because of the asylum request.

Daqa is currently being held in a prison in Wisconsin, where her lawyer s. that she is in general population with prisoners convicted of severe crime

Marilu Cabrera, a spokesperson for BICE, said that the immigration agenc does not have its own facility to hold detainees. Instead, they have an agreement with about 10 states across the country to hold and house arrestees until a hearing is held.

The detainees have to be near the cities in which their hearings are being held, said Cabrera.

The immigration hearing will be held in Chicago.

Odeh said that Daqa lives in Palos Hills with two children. She is educated but she is not a member of any clubs or organizations.

Most of Daqa's family also live in the U.S. One son has severe asthma, an her husband, Abdel Daqa recently had knee surgery and needed post-operative care.

Daqa was denied parole, where she would have been able to give care to her husband, so the children were sent to live with other relatives, said Odeh.

Her husband is also subject to an immigration, he is not in federal custoc Odeh said.

Odeh said that U.S. Sen. Richard Durbin (D-Il) and Cong. Jesse Jackson (D-2nd) have written letters to the BICE on behalf of Daqa, stressing tha she did not violate any laws and should be released.

Christina Angarola, a Communications Director for Durbin's office, confirmed that a letter was sent, but could not give any details regarding the notice.

Daqa will learn of her fate on Nov. 7 when a federal judge will decide whether she will be given the asylum or not.

**Back to top**

## Moraine Valley Unveils Visions of Galaxy, Stars

### By EZTEBE ZANDUETA

*Published October 21, 2003 Southwest News-Herald – Bridgeview, Hickory Hills, Justice Willow Springs Edition*

Moraine Valley Community College, 10900 S. 88th Ave., Palos Hills, recently unveiled its new telescope and observation deck.

Professors, college administrators, staff, students and media attended a dedication ceremony Thursday at the G. Jack Bradley Observation Deck, the campus' Nature Study Area.

"My goal was to make the telescope as light as possible so that it could b slid out of its dome for viewing," said Tom McCague, the associate professor and Biology Department chairman who built and donated the 6 and a half-foot Newtonian telescope. "With all the light pollution in this area, the stars are pretty hard to see around here. For that reason, unfortunately, there only seems to be an armchair interest in astronomy (here)."

**Palestinian woman held in Kenosha** | 1 comments | **Create New Account**

| Oldest First ▾ | Flat ▾ | Refresh | Reply |

The following comments are owned by whomever posted them. This site is not responsible for what they say.

**Palestinian woman held in Kenosha**

Authored by: Anonymous on Sunday, November 02 2003 @ 02:59 PM CST

This is atrocious! The woman clearly wishes to remain in the USA, and is clearly no danger to others. IF the office of Homeland Security has the power to detain someone for NO reason, who is to say Americans who are born and raised here are safe from similar imprisonment? Something needs to be done about the power of the office of Homeland Security which is acting very similar to certain branches of the old Communist regime in the former USSR. Everything about this goes against our Constitution and Constitutional rights as well as the laws of our country. Time to downsize the Government and return it to the power it once was..a Government ran by representatives of the majority of the People of the United States, ..not beaurocrats and their henchmen.

[ **Reply to This** ]

W3C: **Valid HTML 4.01** , **Valid CSS** Powered By: **GeekLog**                    Copyright © 2004 Kenosha Online

All trademarks and copyrights on this page are owned by their respective owners. Created this page in 1.14 seconds.



Add Story - ISP Email - Free Email - Internet SignUp - Games - Jobs Resource - Photos - Join Chat

# Kenosha online.net

enter search here    Search

## CONTENTS



HOME

### My American Experience

- Nobody really knows anything about politics
- Me and my '57 Chevy boiler
- Canada and the US: It's Freaky Friday all over again
- Why America isn't now, nor can ever be, an empire
- Remembrance Day
- Watching commercial TV can warp your mind
- Rush rushed out
- Rush's run-off mouth
- Baseball all the way
- New look

### User Functions

Username:

Password:


Login

Don't have a KenoshaOnline account?
Register as a New User, it's FREE!

### Who's Online

Guest Users: 1

### Sections

Home
! Homeland Security
About Kenosha
Advertise!
HackerTracker
Kenosha Arts
Kenosha Dining
Kenosha Economy
Kenosha Education
Kenosha Government
Kenosha History

Monday, October 20 2003 @ 12:39 PM CDT

## Palestinian woman held in Kenosha

UPDATE



LINA DAQA

## Palestinian woman denied asylum

**Thursday, November 13, 2003**

**By Allison Hantschel**
*Special to The Star*

A Palestinian woman who lived in the south suburbs for more than a year has been denied political asylum in the United States after spending more than five months in jail.

Lina Daqa plans to return to her West Bank hometown, the site of heavy fighting between Israelis and Palestinians, rather than fight to stay in Palos Heights, according to her attorney, Richard Trais.

"She's not going to appeal," Trais said. "She's tired of being in jail. She's been there long enough."

U.S. authorities arrested

### What's Related

- More from US-Civil Rights

### Story Options

- Mail Story to a Friend
- Printable Story Format

THE STORY

## A mother waits out her detention
By Shia Kapos
Chicago Tribune 5 November 2003

## "Momma, momma," momma!"

The small arms of two young children reached for Lina Daqa's embrace only to be stopped by the pane of glass. "She was right there and they wanted to hug and kiss her. But they couldn't and they didn't understand why," said Abdel Raouf, Daqa's husband and father of 3-year-old Majd and 5-year-old Jinan.

Instead, wails and heartache filled the weekly half hour visits with Daqa, a Palestinian mother who has been held at the Kenosha County Jail since May 27 when she requested political asylum in the

Kenosha Homes
Kenosha Humor
Kenosha Internet
Kenosha Jobs
Kenosha Law
Kenosha Links
Kenosha Money
Kenosha Movies
Kenosha Music and...
Kenosha Online
Op/Ed
Kenosha Online
Support
Kenosha Politics
Kenosha Religion
Kenosha Train
US Economy
US Government
US News
US War
US-Civil Rights
US-Crime
US-Election/2004
US-Law
US-Politics
Wisconsin Law
Wisconsin News
Wisconsin OP/ED
Wisconsin Politics
World News
World Press

**What's New**
STORIES
4 stories in last 24 hours

COMMENTS last 48 hrs
- Is the new layout... [+2]
- $1.5 BILLION DONA...
LINKS last 2 wks
No recent new links

**FreeMail**



FREE EMAIL ACCOUNTS
FOR Kenosha County Job
Center Clients.

**Click Here**

**Login to your FreeMail Here**

Daqa in May as she was returning to Chicago from the latest of several trips she made back to the village of Atil in the Palestinian territories. Federal officials took Daqa, her two small children and her husband, Abdul Raouf, into custody, citing visa violations.

Raouf and the children were later released, but Daqa, who had a valid visa, was detained. U.S. immigration officials refused to disclose why she was being held.

Daqa requested political asylum in the United States, saying Atil was unsafe for her family. Raouf claimed the Israeli government seized the family's house and land to build the state's security barrier, which separates Israel and the Palestinian territory and is meant to deter terrorist attacks.

Raouf said Saturday that he was angered by the government's decision to deny his wife asylum.

"This is racist," he said. "They are racist against Muslims and Arabs. They let Mexican people, Chinese people, everybody stay. Except us. It is wrong."

Daqa's case drew the attention of civil rights organizations and Muslim advocacy groups because of the length of her detention and the lack of information being given by the government as to why she was kept in custody.

Raouf denied his wife has

United States. The jail is one of about 10 area facilities used by the Chicago immigration offices to detain immigrants.

"Finally, I stopped taking them. It was too much for Lina and the kids," said Raouf, a 34-year-old taxi driver who also is seeking asylum but has not been detained.

The family all with valid visitors' visas, according to their attorneys--has been living in Palos Hills for more than three years. Raouf said they moved to the United States hoping to wait out the turmoil that has rocked their hometown of Ateel, where Israel is building a dividing wall between it and the Palestinian territories.

Last spring, Daqa, a 29-year-old former office administrator who has a degree in computer economics, had returned to Ateel with her children to visit her home and family. Her attorneys say she found the place in ruins and unsafe for her children.

any criminal record or was involved in any illegal activity.

The Muslim Civil Rights Center urged its members to write to the immigration bureau and "demand Daqa's release and reunification" with her family. The Chicago Response Network, another community group, called for Daqa's freedom and rallied in front of the bureau.

U.S. Sen. Dick Durbin sent a letter to the bureau in support of Daqa's release.

Trais said Daqa is likely to be removed from the country within the next week.

Upon returning to O'Hare International Airport, she requested asylum.

Daqa declined to talk about her case, but her attorneys said she only wants what is best for her family: Living in the United States where her son, who has asthma, can get the proper care he needs.

Her husband, a Chicago cab driver who lost his job as a laborer in the West Bank when Palestinians were ordered not to travel to Israel, says Daqa is seeking asylum because "she wants to be safe. ... She just wants to leave the fighting and the hell."

Worse, Raouf says, the family is living in a new hell. Unable to care properly for his children during Daqa's five-month detention, Raouf has sent them to live with friends. "It should not be this way," he said.

Case has prompted outrage

Daqa's case has prompted outrage among Chicago-area

Arab and Muslim communities, who say she is being targeted because she is Arab. Supporters say she poses no flight risk nor danger to the community, two requirements for being released by the U.S. Department of Homeland Security, which oversees immigration. And though it is not uncommon for lengthy detentions while asylum is considered, some critics say Daqa's case brings to light the ethical flaws in the United States' policy for detaining asylum seekers from any country.

An immigration judge in Chicago is scheduled to decide Friday whether Daqa can remain in the United States or be returned to her homeland.

A spokeswoman from the Chicago immigration office said she could not discuss Daqa's case. Daqa, who is not charged with any crime, is being detained per rules of the United Nations Refugee Convention. Signed by the U.S. and 139 other countries, the self monitored

convention is a blueprint to protect people who seek asylum.

The policy allows detention so officials can examine a refugee's claims and determine whether he or she poses a possible threat to that country.

"It is not Muslim specific. It doesn't matter who you are or where you are from. Black, white, male, female," said James Hathaway, a law professor at the University of Michigan and director of the school's refugee and asylum law program.

The problem, he and others claim, is that many refugees are being denied basic human rights by being detained when there is no need to do so.

"They may be held for good cause," Hathaway said, but once it is determined asylum seekers pose no threat to security and are seeking refuge for legitimate reasons, the convention calls for their release while their asylum request is

Case: 1:04-cv-00778 Document #: 1 Filed: 01/30/04 Page 79 of 83 PageID #:79

considered.

But that often is not the case, he says.

"It is not unusual for anyone seeking refuge in the U.S. to be detained for months, even years," Hathaway said, adding Daqa's case is unusual in that she is the main caretaker of two young children.

No independent oversight

The problem is exacerbated, human rights groups say, because there is no independent oversight of the convention. Countries, like the United States, Britain and Australia, continue to ignore the rules for detaining refugees and violate basic human rights, according to Human Rights Watch, a watchdog organization.

"It borders on xenophobia," Hathaway said. "In signing on to [the Refugee Convention], we've invited people to come here if they need refugee status and then we treat them like [Daqa]. It's punitive."

Chicago immigration officials would not comment on Daqa's case, saying her status will be determined only by an immigration judge.

Her attorneys believe that being a Palestinian is at the heart of the federal government's reason for detaining Daqa.

"She was here on a visitors' visa and changed her mind to seek asylum. They think she's trying to skirt the law because she wants to stay permanently," said Daqa's attorney Reem Odeh.

Legitimate fears

The Arab community says Daqa's fears of living in her war-torn homeland are legitimate and they are critical of the seeming randomness of the U.S. detention policies.

"It is arbitrary to detain her when she, like her husband, has a valid visa" to live in the United States, said Hatem Abudayyeh, director of the Arab American Action Network, which has helped organize

Case: 1:04-cv-00778 Document #: 1 Filed: 01/30/04 Page 81 of 83 PageID #:81

rallies and solicit
help from U.S. Sen.
Dick Durbin and
others to call for
Daqa's release. Her
attorneys say
Durbin has urged
federal officials
to release her; a
spokesman for
Durbin acknowledged
being asked for
help but declined
further comment.

Neighbors, who
describe Daqa as
soft-spoken, kind
and ever-doting on
her children, say
they are frustrated
by the politics
that have torn
apart a family.

"Her kids are the
ones hurting. This
is when they need
her most," said
Dorothy Johnson,
who lives two doors
down from Daqa and
Raouf's third-floor
apartment in a
quiet Palos Hills
neighborhood. "I'm
angry with what's
going on [in the
Middle East]. But
she has nothing to
do with that. She
has a right to be
here and to be with
her kids."

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

Lina Daqa

**DEFENDANTS** Dept. of Homeland Security Bureau of Immigration & Customs Enforcement

DOCKETED

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY) FEB 0 2 2004

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Ph. 773. 878. 8050
Richard Troia
2523 W. Lawrence, Chys. IL 60625

Attorneys (If Known)

JUDGE COAR

04C 0778

MAGISTRATE JUDGE LEVIN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Inj. Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under |
| ☐ 240 Torts to Land | Accommodations ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C § 1983
28 U.S.C. § 1331
28 U.S.C. § 1361

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case _____, previously dismissed by Judge _____

DATE
01-30-04

SIGNATURE OF ATTORNEY OF RECORD
Richard Troia

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Lina Daqa
v.
Dept. of Homeland Security {BICE}

DOCKETED

JUDGE COAR    FEB 0 2 2004

Case Number: A95 925 347

04C 0778

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

MAGISTRATE JUDGE LEVIN

| (A) | (B) |
|---|---|
| SIGNATURE _Richard Trais_ | SIGNATURE _David Trais_ |
| NAME | NAME David Trais |
| FIRM RICHARD H. TRAIS ATTORNEY AT LAW | FIRM |
| STREET ADDRESS 2623 W. LAWRENCE AVE. | STREET ADDRESS RICHARD H. TRAIS ATTORNEY AT LAW |
| CITY/STATE/ZIP CHICAGO, IL 60625 | CITY/STATE/ZIP 2623 W. LAWRENCE AVE. CHICAGO, IL 60625 |
| TELEPHONE NUMBER 773-878-8050 ATTY. No. 15225 FAX NUMBER | TELEPHONE NUMBER 773-878-8050 ATTY. No. 15225 6279935 |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 15225 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6279935 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER FAX NUMBER | TELEPHONE NUMBER FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |