DOCKETED
MAY 0 4 2004

FILED
APR 3 0 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINA DAQA,<br>A95 925 347,<br>    Petitioner<br><br>v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, and CYNTHIA O'CONNELL,<br>Interim Director of the Bureau of<br>Immigration and Customs Enforcement of<br>the DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>    Respondents. | No. 04 C 0778<br><br>Judge Coar |

## PETITIONER'S MEMORANDUM IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS

In support of the Petitioner's request that she be released form the custody of the United States Department of Homeland Security, the Petitioner states as follows:

The Petitioner is an arriving alien who has been detained since her arrival at Chicago O'Hare Airport with a tourist visa on May 31, 2003. She was refused admission and she requested political asylum in the United States. She was found to have credible fear and subsequently an Immigration Judge denied her political asylum application on November 07, 2003. Her appeal to the Board of Immigration Appeals is pending. She has made three requests for parole from custody during the ongoing removal proceedings. These requests were denied by the Respondents, two were summary denials and the most recent third denial was issued many months after the third parole request was made. The third denial attempted to explain the reasons for the denial but its rational appears illogical and the basis for the continued detention of the Petitioner seems arbitrary. The Petitioner also requested that the Immigration Judge to set bond, which request was denied by the Immigration Judge during the procedural stages of her political asylum hearing. Nowhere in these proceedings has it ever been shown that the Petitioner is either a flight risk or poses any danger to the community.



- 2 - April 30, 2004

1. The Petitioner asserts that she is entitled to an individualized bond hearing as a minimal protection of her constitutionally protected liberty interest.

In <u>Bonsol v. Perryman</u>, 240 F. Supp. 823, 2003 U.S. Dist LEXIS 82, U.S. District Court for the Northern District of Illinois, it was held that the minimal accommodation of an individualized bond hearing "will ensure that the Petitioner's due process rights are not abridged and is not onerous when weighed against the liberty interest at stake." <u>Bonsol</u> also dealt with the preliminary jurisdictional issue and concluded that the court could exercise jurisdiction over due process claims and consider the constitutionality of mandatory detention provisions, as have the many courts, some of which are cited below, in Habeas Corpus proceedings which assert the liberty interest of the Petitioner as well as the unconstitutional aspects of the statutory mandatory detention scheme. Id. at 826. Similarly in <u>Forbes v. Perryman</u>, 222 F. Supp. 2d 1076, 2002 U.S. Dist. LEXIS 19216, the court stated that although 8 U.S.C.S. sec. 1226 (e) bars judicial review of discretionary detention decisions, a federal court has jurisdiction over challenges to the constitutionality of the statute.

In <u>Sharma v. Ashcroft</u>, 158 F. Supp.2d 519, 2001 U.S.Dist. LEXIS 11654, it was held that the petitioners therein were entitled to a bail hearing by INS (now Department of Homeland Security, "DHS", United States Immigration and Customs Enforcement, "USICE") pending the outcome of their appeal, despite the mandatory detention requirements of 8 U.S.C.S. sec. 1226 (c). Significantly, the District court for the Eastern District of Pennsylvania held that the mandatory detention of the petitioners pending the outcome of their appeal was a violation of their respective due process rights. This case involved mandatory detention on the basis of the petitioners having committed an aggravated felony.

In <u>Alaka v. Elwood</u>, et al., 225 F. Supp. 2d 547; 2002 U.S Dist. LEXIS 19323, the court determined that the petitioner was an arriving alien; that the District Director's "rubber stamped" denials of the aliens parole requests and her continued detention pending her removal process violated her due process rights and that the petitioner was entitled to an individualized bond hearing by the Immigration Judge.

In <u>Luu v. Demore</u>, 2001 U.S. Dist. 13428, it was held that mandatory detention of an alien pursuant to 8 U.S.C.S. 1226 ( c ) convicted of a criminal offense was unconstitutional in that the alien was deprived of his liberty pending resolution of his removal proceedings and that the alien was entitled to the "modest" right of an individual bond determination regarding whether release pending deportation was appropriate. The Luu court cited <u>Danh v. Demore</u>, 59 F. Supp. 2d 994 at 1001 (1999) which quoted <u>United States v. Salerno</u> 481 U.S. 739, 747, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987). The Luu court stated that the "Salerno" test was whether the governmental restriction is 'excessive' in relation to its purpose. The mandatory detention statutory scheme does not differentiate between "detainees who are dangerous to society and those who are not." Id. at 1002.

2. The Respondents clearly abused their discretion in denying the Petitioner parole in a manner that violated the Petitioner's procedural and substantive rights of due process.

In <u>Marczak v. INS</u>, 971 F.2d 510;1992 U.S. App. LEXIS 16596, the court described the daunting procedures an arriving alien may face as well as explaining the duties of the District Director. "An alien arriving in this country is subject to immediate assessment by the INS. 'Every alien . . . who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry." 8 U.S.C. 1225(b).' Excludable aliens applying for asylum appear before an immigration judge who initially determines whether exclusion is appropriate. That decision may be appealed, first to the Board of Immigration Appeals (BIA), 8 U.S.C. 1226 (b); 8 C.F.R. 103.3, 236.7, and then to the Court of Appeals for the Circuit in which the administrative proceedings were held, 8 U.S.C. 1105(a)(2). Pending a final decision on the merits of the asylum claim, an alien either remains in detention or, in the District Director's discretion, is paroled into the community. <u>Id</u>. at 1182(d)(5)(A); 8 C.F.R. 212.5.

-4- April 30, 2004

Under 8 U.S.C. § 1182 (d)(5)(A), the Attorney General has the discretionary authority to parole an alien into the United States temporarily "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." This authority has been delegated by the Attorney General to the INS, now USICE, and more specifically to the district directors. The INS regulation implementing this statute, 8 C.F.R. § 212.5, states more specifically that parole "would generally be justified only on a case-by-case basis for 'urgent humanitarian reason' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding. The regulations set forth the agency's understanding of the statutory conditions for parole, namely "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. 1182 (d)(5)(A). "Emergent reasons" are defined to include "serious medical conditions in which continued detention would not be appropriate," * C.F.R. 212.5(a)(1). Moreover, the parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest," provided that the aliens present neither a security risk nor a risk of absconding:

(i) Women who have been medically certified as pregnant;

(ii) Aliens who are defined as juveniles . . . .

(iii) Aliens who have close family relatives in the United States . . . ;

(iv) Aliens who will be witnesses in proceedings . . . in the United States;

(v) Aliens whose continued detention is not in the public interest as determined by the district director.

Id. at 212.5(a)(2) (emphasis added). Nowhere does the regulation purport to offer an exhaustive list of the circumstances in which parole should be granted, nor does it imply in any way that the listed factors are the only ones that ought to be considered. To the contrary, section (a)(2)(v) requires the district director to make a comprehensive determination of whether detention would serve the public interest, apart from the enumerated considerations. The only language that arguably supports the government's asserted presumption in favor of detention is the reference to "the parole exception," Id. at 212.5(a)(2). Given the lack of any corresponding statement that detention is the "rule," the failure of Congress to state any preference at all, and the general

"public interest" clause in the regulation, we conclude that there is no intended presumption sufficient by itself to justify the denial of parole. The District Director's duty under both the statute and regulation is to consider whether parole or detention serve the public interest. If he did so properly, the decision must be affirmed; if not, the Director may not invoke a presumption to justify their actions. Marczak v. INS, 971 F.2d 510;1992 U.S. App. LEXIS 16596. Consistent with the right to seek parole is the right to have a fair and impartial determination of the parole request. Ruiz v. INS, 871 F.Supp. 159 1994 U.S. Dist LEXIS 19326. The district director must articulate some individualized facially legitimate and bona fide reason for denying parole and there exists in the record some factual basis for that decision. See Bertrand v. INS, 684 F.2d at 212. See also Marczak v. INS, 971 F.2d 510, 517-518 (10th Cir. 1992) Azizi v. INS, 908 F.2d 1130, 1133 (2d Cir. 1990).

In the instant case the third parole denial states that "The applicants practice of irregular residence and deliberately misleading statements, however, do not leave the writer favorable disposed to exercise discretion in her favor." This conclusion by the director is unreasonable, irrational and not a good faith basis to deny the granting of parole.

This denial of parole questions the credibility of the applicant and veracity of her asylum claim. The Immigration Judge found the Petitioner and her witnesses to be credible. "There are no significant discrepancies between the testimony and the documentary evidence in support of her claim. Thus the court finds the respondent credible." The director did not consider that the finding of credible fear by the Asylum officer made when interviewing Mrs. Daqa as a factor that goes to the credibility of the applicant and the veracity of her claim consistent with the statements made in her credible testimony before the Immigration Judge. By this time in the proceedings doubts about the genuineness of the Petitioner's asylum claim should have been removed.

However, the findings of the Immigration Judge were also discounted and seemingly ignored by the director. In the director's response she states that "the IJ's role is to simply rule on the matter of asylum." The director goes on ... "As the Ultimate arbitrator on questions of detention the Service must take into consideration the totality of circumstances mitigating against the applicants request including the IJ's decision to deny asylum and subsequently deny her MTR." It seems arbitrary and unreasonable that the Service would only consider the outcome of the hearing in determining the credibility of the applicant and veracity of the claim which could be overturned on appeal. The question of having the power to detain is not at issue here but rather having the right to detain Mrs. Daqa and whether there has been an abuse of discretion.

Completely discounted by the Director is the role of the Immigration Judge as a fact finder and an invaluable resource in determining the credibility of the applicant and veracity of the claim. Furthermore the fact findings of the Immigration judge are an integral part of the record and the district director's decision to deny a request for parole even under the "facially legitimate and bonafide" standard of review" must at least be reasonably supported by the record. Marczak v. INS, 971 F.2d 510; 1992 U.S. App. LEXIS 16596. Here, the record completely supports a finding of credibility and the veracity of the asylum claim, the opposite of the director's finding.

As the primary fact finder the Immigration Court attaches significant weight to the credibility of an asylum applicant. See re O-D-, I&N Dec. 1079 (BIA 1998). In assessing credibility as is done in every case, the Immigration Judge takes into account the rationality and the general consistency of the claim. Indeed, the immigration judge can and will make a finding of adverse credibility when (1) there are discrepancies present in the respondents documentary and testimonial evidence; (2) those inconsistencies and omissions provide go reason to conclude that the respondents testimony is incredible; and (3) the respondent fails to provide a convincing explanation for those discrepancies. See Matter of S-A-, 22 I&N Dec. 1328, 1331 (BIA 2000)(citing Matter of A-S 21 I&N Dec. 1106, 1109 (BIA 1998). Here, the applicant and those who testified were all found to credible and the underlying veracity of the claim was affirmed. The only question remaining was whether the suffering of Mrs. Daqa amounted to persecution and that question is under appellate review wherein the issue was whether the taking of her land to build a barrier fence by the Israeli government without benefit of compensation amounted to persecution. At issue is the reaction and outrage of the international community, including the United States, in regard to the confiscation of land of certain Palestinians to build the barrier wall and the motives of the Israeli government in doing so. Most recently even the Supreme Court of Israel has questioned the legitimacy of the barrier and ordered the halting of building part of the fence on the West Bank. The director must be aware of this paramount issue in the Petitioner's asylum case.

The director fails to identify any misstatements by the Petitioner let alone point out any misleading or inconsistent statements by the petitioner. "When faced with cursory, summary or conclusory statements from the BIA, we cannot presume anything other than . . . an abuse of discretion, since 'the BIA's denial of relief can be affirmed only on the basis articulated in the decision . . . and we cannot assume that the BIA considered factors that it failed to mention in its decision'") (quoting Mattis v. INS, 774 F.2d 956, 967 (9th Cir. 1985).    See also Mattis, 774 F.2d at 968. ("The BIA failed to give a reasoned explanation for the exercise of its decision to deny the motion to reopen" a deportation proceeding); Li v. Greene 767 F. Supp. 1087, 1091 (D. Colo. 1991) ("The district director failed to indicate whether he considered these factors"); Caporali v. Whelan, 582 F. Supp. 217, 220 (D. Mass. 1984) ("The record is so opaque that I am unable to engage in judicial review of respondent's decision to detain petitioner without bail").

It is in not in the public interest to continue to incarcerate Mrs. Daqa. Mrs. Daqa, her husband and her two children are suffering irreparable harm and Mrs. Daqa is entitled to the relief of parole. Mersereau v. INS, 875 F.Supp.148; 1995 U.S. Dist. LEXIS 1636. Additionally, letters have been submitted to the director showing the terrible effects this lengthy incarceration is having upon the Mrs. Daqa, her husband and her children who are all in the United States.

The director in issuing the denial said the veracity of the claim was questionable primarily because the applicant traveled between the United States and Israel and that she didn't apply for asylum during the time between June, 2000 and January, 2003. Mrs. Daqa traveled legally between the PA and the United States with a valid visa. Mrs. Daqa was born and raised in the PA. However, during the period of time she traveling from the PA to the United States her husband was living in the United States as are her brother and sister, both U.S. citizens. To characterize Mrs. Daqa's legitimate travel to the United States as any thing less is disingenuous. The director ignores the fact that the Mrs. Daqa asked for asylum after her land was seized without compensation by the Israeli Government and after her life was threatened by the HAMAS. These events did not occur in the time frame noted by the director and the director irrationally uses this as part of her reasoning to doubt the veracity of claim and deny parole. Since Mrs. Daqa was not persecuted prior to these events she had no basis or desire to apply for asylum before she did. It is unreasonable and irrational that the director would expect any person to apply for asylum before the persecution occurred.

The third request for parole was denied in part because of a risk of flight although in the two prior denials a risk of flight was not cited as a reason that parole was being denied. Certainly, circumstances can change and someone can become a flight risk. However no change in circumstances was identified by the Director that makes Mrs. Daqa a flight risk now, where she wasn't before. A district director who decides parole application on the basis on broad non-individualized policies enganges in illegal extra procedural rule making.
Marczak v. INS, 971 F.2d 510; 1992 U.S. App. LEXIS 16596.

In Bertrand v. INS, 684 F.2d 204, the Second Circuit stated that: "the more likely it is that an alien's application will succeed, the less likely it is that he will abscond while on parole and thereby risk his long term chances of legal admission to the United States. . . . An alien likely to achieve the goal of lawful entry into the United States is less likely to abscond than one whose prospects are more doubtful. The court went on to note that "Documentation" is relevant on the absconding issue because the existence of valid travel documents permits the INS to determine an alien's identity and it is much more difficult for an accurately identified alien to abscond while paroled. The fact that the petitioners are unlikely to succeed on their immigration applications also suggests that they pose such a risk if paroled; the more likely it is that an alien's application will succeed, the less likely it is that he will abscond while on parole and thereby risk his long-term chances of legal admission to the United States. The existence of relatives able to confer an "immigration benefit" is relevant to this inquiry because an alien likely to achieve the goal of lawful entry into the United States is less likely to abscond than one whose prospects are more doubtful. See also . Marczak v. INS, 971 F.2d 510; 1992 U.S. App. LEXIS 16596. Other (factors used to determine a risk of flight include whether the petitioner has family ties in the United States. A lack of family ties in the United States would lead to a higher risk of flight. Id. at 512,513.) How the petitioner has conducted himself in the past in regard to complying with immigration law is also relevant. If there is a history of complying with the law it is likely the petitioner will continue to comply with the law. Bertrand v. INS, at 217. Mrs. Daqa is not a flight risk To conclude that she is simply reflects the unreasonable or irrational nature of the director's analysis.

First, in this case the passage of time has allowed events to unfold in such a manner that makes Mrs. Daqa's asylum claim more likely to be granted on appeal, particularly since the denial of asylum was base upon the tenuous legal point that Mrs. Daqa'a appeal is more likely to succeed than not since the evidence is considerable at this point that she did indeed suffer persecution ant the hands of the Israeli Government. Moreover, Mrs. Daqa was threatened with death by the HAMAS a terrorist group that is known to carry out their threats and one of the very

groups that the Israeli Government cannot control and so concerns the Israeli government. "The more likely it is that an alien's application will succeed, the less likely it is that he will abscond while on parole and thereby risk his long-term chances of legal admission to the United States." Id. at 217. Mrs. Daqa intends to fully pursue her asylum claim and her appellate rights.

Ms. Daqa's intent is and always has been to comply with the law. In fact she has never acted outside it. She came to the United States with a valid visa. If there is a history of complying with the immigration laws it is likely the petitioner will continue to comply with the immigration laws. Bertrand v. INS, at 217. Mrs. Daqa is not now nor has she ever been a flight risk. Her spouse, Abdel Raouf Daqqa, A# 095 925 349, has "registered" with the Department of Homeland Security and has already attended two of his immigration court hearings. His next scheduled hearing is June, 2004. It is likely that Mrs. Daqa will be called to testify at this hearing.

The district director's decision must articulate some individualized facially legitimate and bona fide reason for denying parole and there exists in the record some factual basis for that decision al See Bertrand, 684 F.2d at 212. see also Marczak v. INS,, 971 F.2d 510, 517-518 (10th Cir. 1992) Azizi v. Thornburgh, 908 F.2d 1130, 1133 (2d Cir. 1990). A risk of flight is not found in the record nor ever mentioned in the two previous denials of parole. The denial of parole is devoid of facts that support the assertion that Mrs. Daqa is a flight risk.

Incredibly in the denial of parole the Service attempts to blame the petitioner's counsel for the length of the detention citing the number of continuances in the case. However the continuances requested by counsel amounted to only a few weeks during the time that Mrs. Daqa has been incarcerated. Furthermore, the Service asked for a continuance which was granted and the Immigration Judge continued the case after the hearing so he could have time to think about the matter and later render his decision. The service appears to want to punish Mrs. Daqa because there were continuances ordered in the case

Ms. Daqa's incarceration has already been quite lengthy and has caused tremendous hardship on her, her young children and her husband. Keeping Ms. Daqa detained would only increase the hardship on her and her family and not serve any purpose for the government or the public. Ms.Daqa is not a flight risk nor a danger to the community and there is a likelihood that her case will succeed on the merits. These denials of parole or refusal to set bond by the service violate her constitutionally protected right to liberty and she should be afforded some relief.

Respectfully submitted,

*/s/ Richard H. Trais*
Richard H. Trais

Richrd H. Trais
Attorney for Petitioner
2523 W. Lawrence Ave.
Chicago, Illinois 60625
773-878-8050
fax 773-878-8050

Certificate of Service

I Richard H. Trais certify that I send a copy of the attached Memorandum upon the respondents on 4-30-04 before 5:00 pm personally

*/s/ Richard H. Trais*

4-30-04